Garrett BURKE, Plaintiff-Appellant,

v.

COMPANIA MEXICANA DE AVIACION,
S.A., d/b/a Mexicana Airlines,
Defendant-Appellee.

No. 23669.

United States Court of Appeals,
Ninth Circuit.

Nov. 13, 1970.

Stewart Weinberg (argued), Victor G. Van Bourg, of Levy & Van Bourg, San Francisco, Cal., for plaintiff-appellant.

Leigh Athearn (argued), of Athearn, Chandler & Hoffman, San Francisco, Cal., for defendant-appellee.

Before DUNIWAY and KILKENNY, Circuit Judges, and PLUMMER, District Judge.*

DUNIWAY, Circuit Judge:

Burke appeals from an order of the District Court dismissing his action for failure to state a claim upon which relief can be granted. The sole issue presented is whether an employee alleging wrongful discharge in violation of section 2 (Fourth) of the National Railway Labor Act, 45 U.S.C. § 152 (Fourth), and who is not represented by a union, may bring suit in his own name against his employer seeking reinstate-

* Honorable Raymond E. Plummer, United States District Judge, District of Alaska, sitting by designation.

ment and damages. We hold that he may, and reverse.

■ The material allegations of Burke's First Amended Complaint must be taken as true for the purpose of this appeal. It alleges that defendant is a Republic of Mexico corporation doing business in California under the name Mexicana Airlines. (It is subject to the Act. (45 U.S.C. § 181.)) Before May 29, 1967 Burke was employed by defendant as an "outside salesman." During his employment the International Association of Machinists and Aerospace Workers (the union) began to organize employees of defendant. Burke became active in the organizational effort. He attempted to join the union and to extend its coverage to his employee unit, outside salesmen. Ultimately, a certification election, excluding Burke's unit, was conducted by the National Mediation Board. On May 29, 1967, defendant discharged Burke because of his organizational activities.

Because of its exclusion from the certification election, Burke's unit is not represented by the union or any other labor organization, nor is there any collective bargaining agreement applicable to Burke. After his discharge, Burke requested that the union represent him concerning his discharge. The union refused. Burke then applied to the National Mediation Board and to the National Railroad Adjustment Board. Each declined jurisdiction stating that it was not empowered to adjudicate Burke's claim.

Section 2 (Fourth), 45 U.S.C. § 152 (Fourth), provides in part:

"Fourth. Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees * * *."

For the purposes of this appeal it is conceded that the actions of defendant airline in discharging Burke for his organizational activities violate section 2 (Fourth). Defendant contends, however, that the right to enforce this section lies solely in the union involved and not in Burke, the aggrieved employee. We disagree.

As originally enacted in 1926, the Railway Labor Act provided no express means for enforcement of the duties imposed upon carriers and their employees and their representatives by section 2. The absence of a statutory scheme of enforcement, however, did not prevent the courts from fashioning appropriate judicial remedies for violations of the Act. The leading Supreme Court decision is Texas & New Orleans Railroad Co. v. Brotherhood of Railway & Steamship Clerks, 1930, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034, where it was held that a union could sue for injunction restraining the company from interfering with its employees' right to organize and designate bargaining representatives, in violation of Section 2 (Third) of the Act. No such remedy was mentioned in the Act; indeed, at that time it did not prescribe any sanctions.

Section 2 (Fourth) was added to the Act in 1934. It is largely an amplification of the duty of non-interference contained in section 2 (Third), extending that duty to the right of employees to organize and bargain collectively. There is no difference between the two provisions which would support granting enforcement of one while denying it of the other.

Defendant, however, asserts that Burke, acting in his individual capacity, has no cause of action for a violation of that section, but that the right of en-

forcement lies solely in the union. Defendant relies on section 2 (Tenth) of the Act, also added in 1934. It provides criminal penalties for "wilful failure or refusal * * * to comply with the terms of the third, fourth, fifth, seventh, or eighth paragraph of this section." *Responsibility for instituting criminal proceedings* is placed upon "any United States attorney to whom any duly designated representative of a carrier's employees may apply." "Representative" is defined in section 1 (Sixth) of the Act as "any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees, to act for it or them." Defendant argues that these two provisions read together indicate a congressional intent to foreclose the right of enforcement to an individual employee acting on his own behalf. The union and only the union, it is argued, may enforce section 2 (Fourth) either by applying to the United States attorney for criminal sanctions or by seeking an injunction under *Texas & New Orleans Railroad, supra.* We find the defendant's arguments unpersuasive.

First, it is not at all clear to us that the permissive language of section 2 (Tenth) would operate to restrain the United States attorney from prosecuting for violations of section 2 that come to his attention from a source other than a union's application.

Second, even if we were to accept the proposition that the criminal enforcement mechanism may be initiated only at the request of the union, there is no indication in the Act itself or its legislative history that Congress intended this sanction to be exclusive. The floor debates that preceded passage of the 1934

amendments contain no analysis of the enforcement provision. The report of the Senate Committee on Interstate Commerce indicates only that Congress was deeply concerned that there be adequate penalties for violation of section 2 (Fourth).[1]

To hold, in this case, that Burke may not bring suit for a violation of section 2 (Fourth) would leave a gap in the enforcement of that section which would blunt the effectiveness of the congressional purpose. So long as a carrier's interference with its employees' right to freely organize were swift and forceful enough to prevent organization of a union altogether or to coerce employees into joining a company dominated union,[2] the carrier would have acted with impunity. There would be no union, or at least none willing, to press the employees' claim. In Burke's case this is precisely what happened. He was discharged before he was able to extend union coverage to his unit. Thus he is not a member of the union, and the union has no duty or desire to represent him. If Burke cannot sue to enforce the Act, no one can. Such a result is inconsistent with Congress' concern that section 2 (Fourth) be backed by adequate penalties and could not have been intended.

■■ Nor is Burke's remedy limited to institution of criminal proceedings under section 2 (Tenth). In the absence of a clear congressional intent to the contrary, the courts are free to fashion appropriate civil remedies based on the violation of a penal statute where necessary to ensure the full effectiveness of the congressional purpose. See, *e. g.,* Wyandotte Transportation Co. v. United States, 1967, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407; J. I. Case Co. v. Borak, 1964, 377 U.S. 426, 84 S.Ct. 1555, 12 L.

1. The Committee, reporting on the Senate version of the bill, S. 3266, stated that the "prohibition [contained in section 2 (Fourth)] is not new. Congress has declared it three times. * * * But there are no penalties against its violation. This bill provides severe penalties for violation of the law." S.Rep.No.1065, 73d Cong., 2d Sess. 2 (1934).

2. The prevention of company dominated unions was a major purpose of the Act. See Railway Employees' Department, A.F.L. v. Hanson, 1956, 351 U.S. 225, 231, 76 S.Ct. 714, 100 L.Ed. 1112.

Ed.2d 423; Texas & Pacific R. Co. v. Rigsby, 1916, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874. Where the interest asserted by the plaintiff is within the class that the statute was intended to protect, the harm of the type the statute was intended to forestall and the statutory criminal penalty inadequate to fully protect the asserted interest, a civil action for damages arises by implication. Wyandotte Transportation Co. v. United States, *supra*.

■ There can be no doubt that the Railway Labor Act creates a right in favor of employees to be free from interference and coercion in the selection of bargaining representatives. See 45 U. S.C. § 151a(2). Section 2 (Fourth) itself speaks of the "right" of employees to "organize and bargain collectively." Nor can there be doubt that discharge of an employee because of his attempts to organize a union is a harm of the type the statute was intended to forestall.

The imposition of criminal penalties upon the employer is inadequate to protect the organizational rights of the discharged employee. Such penalties would neither restore Burke to the position where he could again exercise those rights nor recompense him for the pecuniary loss suffered as a result of their violation. The only remedies adequate fully to effectuate the congressional purpose in this case are those requested by Burke—damages and reinstatement.

Our holding here is consistent with a recent decision of the Third Circuit which affirmed an award of damages and reinstatement in favor of an employee claiming discharge in violation of section 2 (Fourth) and (Eleventh) of the Act. See Brady v. Trans World Airlines, Inc., 3 Cir., 1968, 401 F.2d 87. We express no opinion as to whether Burke could maintain the action if he were a member of the union and of the bargaining unit.

Reversed.