Donald E. HODGES and Ricky D. Mikell, Plaintiffs,

v.

John TOMBERLIN, Patrick Ward, J. B. Rollison, Charles Phillips, Robert Goethe, George Nichols, individually and in their capacities as agents and employees of The Georgia Ports Authority, and The Georgia Ports Authority, Defendants.

CV480–156.

United States District Court, S. D. Georgia, Savannah Division.

Dec. 12, 1980.

Cletus W. Bergen, II, Savannah, Ga., for plaintiffs.

G. Paris Sykes, Jr., Atlanta, Ga., Fred S. Clark, Savannah, Ga., for Ga. Ports and George Nichols.

## ORDER

B. AVANT EDENFIELD, District Judge.

The case involves a dispute as to the actions and motivations of the individual defendants and Georgia Ports Authority (GPA) with respect to the plaintiffs' discharge from their jobs as crane operators. Plaintiffs have alleged that this termination was motivated by their efforts to promote union organization among GPA employees. Defendants concede that this Court has jurisdiction over the dispute pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Defendants do, however, dispute plaintiffs' further claims of jurisdiction pursuant to § 1983 of the Civil Rights Act of 1867, 42 U.S.C. § 1983, and the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq.* Defendants have moved to dismiss these claims, and also plaintiffs' allegation of a conspiracy among the various individual defendants, all of whom are GPA employees. Defendants have also moved to strike plaintiffs' pleading styled "Second Amended Complaint As Of Course" for failure to seek leave of the Court before filing.

Plaintiffs have responded to these motions alleging that jurisdiction is proper under all three of the above-named statutes. Plaintiffs' attorney acknowledged in a status conference held November 7, 1980, that the second amended complaint had been improperly filed. Plaintiffs have therefore filed a motion for leave to amend to add allegations contained in these pleadings. Plaintiff has also responded to defendants' contention that they are not entitled to a jury trial of any of these matters by asserting that an advisory jury is their "right" pursuant to Rule 39(c), F.R.Civ.P., with respect to claims under the Railway Labor

Act. Plaintiffs also still appear to argue that a jury is proper with respect to their § 1983 claims pursuant to Rule 38, F.R. Civ.P.

In the present order, the Court considers all of these matters. Based upon this analysis the Court concludes that plaintiffs do appear to state a valid cause of action under § 1983. The Court also concludes that plaintiffs' motion to amend should be granted, as should defendants' motion to strike the second amended complaint. Defendants' motion to dismiss claims under the Interstate Commerce Act will be provisionally granted. It also appears that plaintiffs are not entitled to a binding jury resolution of any claim. Ruling on defendants' motion to strike allegations of conspiracy will be delayed until a later point in these proceedings.

### Background

Plaintiffs were employees of the defendant GPA, working as crane operators at the defendant's Savannah area facilities. Plaintiffs were discharged by the GPA on January 28, 1980, ostensibly at least for falsifying time records which were the basis for determining their working hours and pay rates. Plaintiffs contend that their discharge was in fact to retaliate against efforts they had made to organize a union at the GPA. The Authority is a public corporation and an instrumentality of the State of Georgia which operates terminal, warehouse and other facilities at Savannah.

The present litigation was originally brought in June, 1980, claiming violation of Constitutional rights to free speech and association giving rise to liability under § 1983. According to statements made during the November status conference, plaintiffs' attorney was then unaware of the applicability of the Railway Labor Act (RLA) to the GPA. Defendants then moved to dismiss claiming that the RLA was plaintiffs' exclusive remedy. Plaintiffs have now amended their complaint to add a claim under the RLA. There is no controversy over the applicability of this statute, which develops out of GPA operation of a small railroad in conjunction with its port facilities. See In the Matter of the Applica-

tion of International Longshoreman's Association, AFL–CIO, National Mediation Board, File No. C–3902, Findings Upon Investigation, November 7, 1969. As was indicated above, considerable dispute surrounds plaintiffs' other allegations.

### § 1983

Plaintiffs have alleged jurisdiction pursuant to § 1983 based upon the defendant's alleged denial of their Constitutional rights to free speech and association. Defendants have moved to dismiss this claim on various grounds. All defendants contend that suit under § 1983 is barred by the Railway Labor Act. Defendants argue that this statute is plaintiffs' exclusive remedy in that § 1983 is expressly repealed by it or at least impliedly repealed or preempted by more specific remedies provided under this labor legislation. The defendant GPA further contends that suit against it under § 1983 is unavailable, (1) because it is not a "person" within the meaning of § 1983; (2) as a state agency, it is protected against suit for monetary damages by the Eleventh Amendment and (3) because it has not waived this protection by any purposeful action. The individual defendants move to dismiss the § 1983 claim to the extent that it seeks monetary relief against them as GPA employees, claiming that this is in essence a suit against the state and also barred by the Eleventh Amendment.

■ It is obvious of course that § 1983 by its literal terms does provide a cause of action for violation of rights "secured by the constitution and laws" of the United States. Therefore, it would appear that plaintiffs' allegations with respect to the First Amendment are sufficient to state a claim. It would also appear that the alleged violation of the Railway Labor Act would similarly give rise to a claim cognizable under § 1983. See Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The Court must therefore determine whether any of the various arguments presented by the defendants are sufficient to overcome these apparently clear jurisdictional bases.

With respect to its argument that it is not a "person" within the meaning of § 1983, GPA cites *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). *Quern* does recognize a significant limitation on actions under § 1983 against a state agency by specifically holding that, consistent with the Eleventh Amendment, relief generally must be limited to prospective injunctive relief, not money damages. However, it is obvious that, if any relief at all may be afforded under § 1983 against a state, it must be a "person" within the meaning of the statute for at least some purposes.

Second, it is clear from *Quern* that a state may be subject to monetary as well as injunctive relief where it has waived immunity under the Eleventh Amendment. The Court quotes, with approval, its prior holding in *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) that "[t]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." 438 U.S., at 781, 98 S.Ct. at 3057.

Thus, the question becomes whether the State of Georgia has waived immunity under the Eleventh Amendment in establishing the Georgia Ports Authority. The relevant statute provides as follows:

There is hereby created a body corporate and politic, to be known as the Georgia Ports Authority, which shall be deemed to be an instrumentality of the State of Georgia and a public corporation, and by that name, style, and title the said body may contract and be sued, implead and be impleaded, and complain and defend in all courts of law and equity.

Ga.Code Ann. § 98–202. Obviously, this statute does appear to waive immunity with respect to suit in this Court. *Florida Nursing Home Association v. Page*, 616 F.2d 1355, 1362 (5th Cir. 1980), cited by the defendants in support of a contrary conclusion, in fact only reinforces the view that the state has waived immunity. *Page* does hold that a waiver of suit in state courts is not to be construed automatically to include federal litigation as well. However, the

Court then goes on to deduce the availability of a remedy in federal court from a contractual pledge that federal policy would be followed. In the present case, there is of course no need to find waiver by implication, since the Georgia statute expressly states that suit may be brought "in all courts of law and equity."

It is clear then that the GPA is properly within the nominal coverage of § 1983. Thus the motion to dismiss these claims by the Authority and the individual defendants must be rejected unless the Railway Labor Act is established as plaintiff's exclusive remedy, as the defendant's have also contended. In this regard, it is argued first that § 163 of the RLA constitutes an explicit repeal of § 1983. This statute provides as follows:

Title III of the Transportation Act, 1920, and the Act approved July 15, 1913 providing for mediation, conciliation, and arbitration, and all Acts and parts of Acts in conflict with the provisions of this Act are hereby repealed, except that the members, secretary, officers, employees, and agents of the Railroad Labor Board, in office upon the date of passage of this Act [May 20, 1926], shall receive their salaries for a period of 30 days from such date, in the same manner as though this Act had not been passed. (May 20, 1926, c. 347, Title I, § 14, in part, 44 stat. 587.)

45 U.S.C. § 163. Obviously, this section makes no specific mention of § 1983 or any other statute not dealing directly with transportation questions. Nonetheless, defendants argue that § 1983 should be viewed as "in conflict with" the Act and thus repealed. In support of this view, the defendants list numerous alleged distinctions which could or would develop were this suit to proceed under both § 1983 and the RLA.

The Court cannot conclude that the differences between these two statutes are sufficient to support a finding of explicit repeal. Section 163 is placed at the end of the Act for the obvious purpose of facilitating transition from certain prior legislation along with other sections with similar pur-

poses, such as appropriation of funds. There is no basis in its language for concluding that any broader purpose was intended. Moreover, such a view is reinforced by the fact that § 152, fourth, which provides employee protection against coercion with respect to organization and a specific basis for the present suit, was enacted in 1934, or eight years *after* § 163. Thus § 1983 could not have been "in conflict with" § 152, fourth when § 163 was passed.

■ It appears to the Court that, if the Railway Labor Act does repeal § 1983, this repeal can be found only by implication or preemption. In determining whether such a finding is proper, the Court is guided by the following principles:

> The cardinal rule is that repeals by implication are not favored. Where there are two acts upon the same subject, effect should be given to both if possible. There are two well-settled categories of repeals by implication—(1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the later act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment.

*Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). See also *Waters v. Wisconsin-Steel Works of International Harvester Co.,* 427 F.2d 476 (7th Cir. 1970).

Thus, if defendants' argument is to prevail, it is not sufficient merely that some difference in the two statutes be shown. These differences must be "irreconcilable." Moreover, it is not enough that some similarity of subject matter can be found. The latter act must cover the "whole subject matter" so that it is "clearly-intended as a substitute." Defendants have cited no case which finds either of these tests met in the present context, and the Court's research has likewise revealed none. Instead, defendants rely on holdings with respect to other statutes in the broad area of civil rights, particularly *Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), and *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

*Brown* holds that § 717 of the Civil Rights Act of 1964, as amended, provides an exclusive judicial remedy for claims of discrimination in federal employment, preempting § 1981. Similarly, *Preiser* finds that specific habeas corpus remedies under 28 U.S.C. § 2254 preempt recourse to § 1981. In both these cases, the Supreme Court found the general provisions of the Civil Rights Act replaced by a later, more "precisely drawn, detailed statute" characterized by "balance, completeness, and structural integrity," 425 U.S., at 834, 832, 96 S.Ct., at 1968.

Defendants argue that the Railway Labor Act should also be viewed as a later, more complete, more detailed statement of congressional intent, designed to replace earlier, broader formulations like § 1983. In support of this view, defendants cite numerous cases discussing railroads as "a thing apart" to which Congress intended to apply a set of special rules. *Elgin, J & E.R.R. v. Burley,* 325 U.S. 711, 751, 65 S.Ct. 1282, 1302, 89 L.Ed. 1886 (1945) (Frankfurter dissenting). Defendants also cite numerous cases holding that protection of the right to organize is central to the purposes of the Railway Labor Act and hence that the discharged employee does have a private right of action under § 152. See, e. g., *Burke v. Compania Mexicana De Aviacian,* 433 F.2d 1031 (9th Cir. 1970).

Defendants thus contend that the RLA was intended as a broad warrant for controlling of the industry, that § 152 is an essential part of this arrangement and hence that § 1983 should be viewed as repealed by implication or preempted. However, after review of the purposes of § 152 and its treatment by the courts, I cannot agree with defendants' contentions. It ap-

pears that § 152 was not viewed by Congress as replacing any statute but instead as a supplement to existing legislation which was viewed as inadequate. See *Burke, supra*, at 1033 N. 1. Thus there is no reason to believe that Congress wished to replace existing remedies available to the employee. In fact, its purpose appears to have been the opposite.

Second, the Court notes that § 152 does not in fact provide any elaborate or complete mechanism for settlement of disputes in cases such as the present one where no union has yet been certified. In fact, § 152 does not even specify a judicial role or specific remedies which the employee may seek. In construing the statute, courts have been forced to *imply* the existence of remedies such as backpay, reinstatement and the like. See, e. g., *Adams v. Federal Express Corporation*, 470 F.Supp. 1356 (W.D.Tenn.1979). In fact, it was by no means clear that any private right of action existed under § 152 as late as 1970 when *Burke* was decided. See also *Brady v. Trans World Air Lines*, 401 F.2d 87 (3rd Cir. 1968).

Thus, it does not seem that the Railway Labor Act provides anything resembling an elaborate, complete framework for resolution of disputes such as the one presently at issue. Quite the opposite, allegations of coercion with respect to organizational efforts have been dealt with in the courts only by implying equitable powers where Congress in fact specified none. This situation in no way resembles those faced by the Supreme Court in *Brown* and *Preiser*. In both of these instances, a holding that concurrent remedies were available would have circumvented elaborate administrative machinery designed to meet the very purposes for which suit had been brought.

Several cases dealing with other statutes and the Railway Labor Act also support the proposition that it is not to be construed as an exclusive remedy. Thus, in *Norman v. Missouri Pacific Railway*, 414 F.2d 73 (8th Cir. 1969) the Court found that railroads were not exempt from suit under Title VII. Similarly, in *Kidder v. Eastern Airlines, Inc.*, 469 F.Supp. 1060 (S.D.Fla.1979), the court held that the Railway Labor Act did not preempt suit under the Veteran's Reemployment Rights Act, 38 U.S.C. § 2021 *et seq.* Of course, this Court has already approved joinder of a claim under the Railway Labor Act with others brought pursuant to Title VII and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq. Davin v. Delta Air Lines, Inc.*, CV479–147 (S.D.Ga.1979).

Furthermore, the Court cannot conclude at this point that § 1983 and the RLA do not provide supplementary rather than conflicting grounds for relief. It is possible that plaintiffs' constitutional rights will prove to be significantly different from statutory protections under the RLA. Certainly, this Court cannot lightly reject the possibility at this point in the development of the case, especially in light of the many distinctions between the RLA and § 1983 suggested in defendants' brief.

In light of all these considerations, I cannot conclude that defendant's motion to dismiss should be granted at this time. While the Court certainly does not hold that § 1983 is available with respect to all claims cognizable under the Railway Labor Act, I find no firm basis for concluding that it cannot be applied to the present case where no union is now involved and no administrative procedure under the Act circumvented. Instead, the Court concludes that the proper approach is to proceed with resolution of both claims, while attempting to resolve any conflicts which may develop in light of the Congressional intent behind each measure. See *Waters v. Wisconsin Steel Workers of International Harvester Co.*, 427 F.2d 476 (7th Cir. 1970).

### INTERSTATE COMMERCE ACT

■ Treatment of plaintiffs' claim under the Interstate Commerce Act need not be extended. Plaintiffs' complaint states only that the defendants have acted in violation of this Act. However, plaintiffs have in no way specified what provision of this lengthy, complex legislation they rely upon. Moreover, plaintiffs' brief in response to the motion to dismiss addresses only the application of commerce clause to the defend-

ants. Defendants point out correctly that the thrust of the ICC Act has little or nothing to do with questions of union organization and employee discipline such as are now before the Court. Also, it is difficult to see what benefit may accrue by invocation of this Act which is not already available under § 1983 and the Railway Labor Act. The Court will therefore grant defendants' motion to dismiss, should plaintiffs not provide some specification of the claim alleged under this statute.

### *"Conspiracy"*

Plaintiff has similarly made broad, vague claims of a conspiracy among the GPA and the individual defendants presumably to deprive plaintiffs of constitutional or statutory rights. In this regard, the Court would point out that a conspiracy must involve more than one party. Thus it is generally held that a corporation cannot conspire with its own agents since they are collectively regarded as one party so long as the agents are acting within the scope of their employment. See, e. g., *Nelson Radio and Supply Co. v. Motorola, Inc.,* 200 F.2d 911, 914 (5th Cir. 1952). Since it is not yet certain that plaintiffs cannot establish a conspiracy among employees acting in their individual capacities, the Court will not rule on defendants' motion to dismiss at this time. However, plaintiffs should interpret this decision as an opportunity to develop a sufficient cause of action not as a signal that one is presently before the Court. The Court merely concludes that at present it is not "beyond doubt that plaintiff can prove no set of facts . . . which would entitle him to relief." *Conley v. Gibson,* 335 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### *Jury Trial*

Finally, the Court will briefly consider plaintiffs' demand for trial by jury in the present action. With respect to their claim under the Railway Labor Act, it appears that plaintiffs now allege only the "right" to an advisory verdict pursuant to Rule 39(c), F.R.Civ.P. An advisory jury is not the "right" of any plaintiff. It is discretionary with the Court. See Wright &

Miller: *Federal Practice And Procedure;* Civil § 2335. See also *In re Pan American Life Insurance Company,* 188 F.2d 833 (5th Cir. 1951).

Furthermore, with respect to plaintiffs' allegations under § 1983, it is apparent that equitable relief in the form of backpay and reinstatement are being sought. It is also obvious that these demands are not subject to jury trial. See 30A C.J.S. *Equity* § 496. Moreover, plaintiffs do not change the essentially equitable nature of their claim merely by adding "unsupported allegations of compensatory and punitive damages." *Lynch v. Pan Am World Airways, Inc.,* 475 F.2d 764 (5th Cir. 1973). See also *Harkless v. Sweeney Independent School District,* 427 F.2d 319 (5th Cir. 1970).

The Court therefore determines that plaintiffs' motion for jury trial cannot be accepted with respect to their § 1983 claims. The Court further determines that little purpose would be served by use of a strictly advisory jury with respect to this cause of action, or concerning plaintiffs' claim under the Railway Labor Act. Motion for jury trial will therefore be denied.

### *Conclusion*

Upon consideration of the various motions now before the Court, several determinations have been reached. First, defendants' motion to strike the pleading styled "Second Amendment As Of Course" is granted. Plaintiffs' motion to amend is also granted. Defendants' motions to dismiss claims under § 1983 are denied. Defendants' motion to dismiss claims under the Interstate Commerce Act is granted, subject to plaintiffs' right to amend present allegations to specify some statutory violation within ten days from the entry of this Order. The Court will defer ruling on defendants' motion to strike plaintiffs' allegation of conspiracy until a later point in the litigation.