**Robert STRANGE, Plaintiff,**

v.

**John CHUMAS and Washington Metropolitan Area Transit Authority, Defendants.** ·

**Civ. A. No. 83–1719.**

United States District Court, District of Columbia.

Sept. 30, 1983.

Mark A. Venuti, Washington, D.C., for plaintiff.

Janet B. Rubin, WMATA, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Plaintiff, an employee of defendant Washington Metropolitan Area Transit Authority (WMATA), was arrested on September 6, 1982, by defendant Chumas, a WMATA transit police officer, at the Union Station Metrorail terminal and charged with attempted breaking and entering, petit larceny, embezzlement and destruction of property. All charges were later dropped or dismissed. On June 15, 1983, plaintiff brought the present civil suit alleging that WMATA negligently and intentionally failed properly to supervise its police force and violated 42 U.S.C. § 1983 and the Fourth and Fifth Amendments in connection with plaintiff's arrest. WMATA has moved to dismiss.

WMATA claims immunity from the present suit based on section 80 of the Washington Metropolitan Area Transit Authority Compact (the Compact). WMATA's organization, powers and operation are governed by the Compact, which has been adopted as law in Virginia, 1966 Va.Acts 2, in Maryland, 1965 Md.Laws 869, and in the District of Columbia, 80 Stat. 1324 (1966), and has been approved by Congress as required by the Compact Clause of the Constitution. *Id.* The Compact thus has the force and effect of state law in each state, and the force and effect of federal law. *Texas v. New Mexico,* — U.S. —, —, 103 S.Ct. 2558, 2564, 77 L.Ed.2d 1 (1983).

Two basic issues are presented. The first is whether the terms of the Compact are intended to grant WMATA immunity

as to claims stemming from an alleged unlawful arrest. If so, the Court must further determine whether WMATA is entitled to the protection of the Eleventh Amendment, which is necessary for a constitutional claim to be barred.[1] *See Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The United States Court of Appeals for the District of Columbia Circuit has yet to decide this Eleventh Amendment issue. *Morris v. WMATA*, 702 F.2d 1037, 1041 (1983).

■ Section 80 of the Compact addresses the question of sovereign immunity.

The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, ... but shall not be liable for any torts occurring in the performance of a governmental function.

This provision clearly conveys an intent to waive WMATA's immunity from suit, but only to a limited extent. Relying upon *Hodges v. Tomberlin*, 510 F.Supp. 1280 (N.D.Ga.1980), however, plaintiff argues that section 81 of the Compact "expressly" provides a general waiver of sovereign immunity.

The United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against the Authority ....

In *Hodges* the court held that a statute which provided that the Georgia Ports Authority, a state agency, "may contract and be sued, implead and be impleaded, and complain and defend in all courts of law and equity" constituted a waiver of sovereign immunity. 510 F.Supp. at 1283. While the language of the two provisions is somewhat similar, however, *Hodges* provides little guidance for the present case.

Section 81 cannot be read alone, but must be considered in the light of the sec-tion which directly precedes it. Read together, it is apparent that section 80 of the Compact was intended to waive WMATA's immunity with respect to a particular class of cases, and section 81 was intended to establish in which courts that class of cases could be brought. Interpreted in this straightforward manner, sections 80 and 81 are entirely consistent and establish a coherent and logical statutory scheme. Adoption of plaintiff's forced construction of section 81, by contrast, would render the language of section 80 inconsistent with that of section 81 and therefore meaningless. Common sense as well as general principles of statutory construction prohibit such a result.

■ Plaintiff's claim, arising out of his arrest by a WMATA transit police officer concededly "acting under color of law and his authority as a WMATA transit officer," Complaint ¶ 6, falls squarely within the sovereign immunity retained by WMATA in section 80. The WMATA Transit Police is "a regular police force," accorded the powers and duties of a normal governmental police force. Compact § 76. Courts which have addressed the issue have squarely held that the operation of the WMATA police force "is a governmental function" within the meaning of section 80. *Martin v. WMATA*, 667 F.2d 435, 436 (4th Cir.1981). *See also Gillot v. WMATA*, 507 F.Supp. 454, 457 (D.D.C.1981); *Chase v. WMATA*, 109 Wash.Daily L.Rep. 1517 (D.C.Sup.Ct.1981). Because plaintiff has alleged constitutional torts, however, the present claim is barred only if section 80 effectively conveys to WMATA the protection of the Eleventh Amendment.

■ The Eleventh Amendment grants immunity only to the states; hence WMATA must be an arm of state government in order to claim the benefits of the Amendment. An entity such as WMATA will not be denied Eleventh Amendment immunity,

---

**1.** It is clear from the face of the complaint that certain of plaintiff's claims are constitutional in nature. Paragraph 9 alleges that plaintiff was arrested "without probable cause and without a warrant," and paragraph 13 alleges that WMA-TA "purposely ignored" constitutional considerations in encouraging its officers to increase arrests and prosecutions. Paragraph 18 specifically alleges violations of the Fourth and Fifth Amendments, as well as § 1983.

however, simply because it might be an agency of several state governments rather than just one. *Trotman v. Palisades Interstate Park Commission,* 557 F.2d 35, 38 (2d Cir.1977). In *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the Supreme Court considered under what circumstances an agency created by interstate compact was entitled to the protection of the Eleventh Amendment.

> If an interstate compact discloses that the compacting States created an agency comparable to a county or municipality, which has no Eleventh Amendment immunity, the Amendment should not be construed to immunize such an entity. Unless there is good reason to believe that the States structured the new agency to enable it to enjoy the special constitutional protection of the States themselves, and that Congress concurred in that purpose, there would appear to be no justification for reading additional meaning into the limited language of the Amendment.

440 U.S. at 401, 99 S.Ct. at 1177.

■ In determining the intent of Congress and of the States, the Court must look first to the terms of the Compact. Section 2 of the Compact describes WMATA as "a common agency of each signatory party," and section 4 specifically creates WMATA "as an instrumentality of each of the signatory parties." On its face, then, the Compact manifests an intent to create an entity which is part of the government of the District and the state governments of Virginia and Maryland, rather than a political subdivision akin to a municipality. This interpretation of the Compact has been adopted by the Fourth Circuit and by the highest courts of both Virginia and the District of Columbia. *See WMATA v. One Parcel of Land,* 706 F.2d 1312, 1314 (4th Cir.1983); *Potomac Electric Power Co. v. State Corporation Commission,* 221 Va. 632, 272 S.E.2d 214, 215 (1980); *Qasim v. WMATA,* 455 A.2d 904, 905 (D.C.1983), *cert. denied,* — U.S. —, 103 S.Ct. 2090,

77 L.Ed.2d 300 (1983). The governments of Maryland and Virginia have also taken this position in a brief *amici curiae* filed in the Supreme Court in *Qasim.*

WMATA is thus sharply distinguished from the agency in *Lake Country Estates,* which the Supreme Court held was not entitled to Eleventh Amendment immunity. The interstate compact creating that agency described the agency as a "separate legal entity" and a "political subdivision," and the signatory states filed briefs specifically "disclaiming any intent to confer immunity" on the agency. 440 U.S. at 391, 99 S.Ct. at 1172. Here, in contrast, there can be no doubt that Congress and the states intended that WMATA be an arm of state government.

■ A second major consideration also distinguishes the present case from *Lake Country Estates.* Although WMATA does not have the power to pledge the credit of the signatory states, Compact § 29, and the governments of Virginia and Maryland are not required by the terms of the Compact to provide funding, these governments have in fact, along with the District and the federal government, provided substantial funds to WMATA in order to cover WMATA's operating deficits. *See, e.g.,* 1980 Md. Laws 530; 1982 Va.Acts 684. It is thus apparent that as a practical matter judgments against WMATA may ultimately be born by the public fiscs of the signatory governments.

The Supreme Court has recognized that protection of the state treasury lies at the heart of the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). And in support of its holding in *Lake Country Estates,* the Court noted that "[f]unding under the Compact *must* be provided by the counties, *not* the States." 440 U.S. at 402, 99 S.Ct. at 1177 [emphasis added.] While the language of the WMATA Compact does not *require* funding by Maryland and Virginia, it does permit it, and such funding has been forthcoming. Furthermore, a separate statute has made additional federal funding of WMATA, necessary to its sur-

vival, contingent on commitments of funding by the other governments involved, including Maryland and Virginia. National Capital Transportation Amendments of 1979, P.L. 96–184 (1980). The Court thus cannot ignore the likelihood that a judgment against WMATA "would have essentially the same practical significance as a judgment against the State[s] [themselves]." *Lake Country Estates,* 440 U.S. at 401, 99 S.Ct. at 1177.

■ Based on the language of the Compact and on consideration of the underlying purposes of the Eleventh Amendment, the Court must conclude that in enacting the Compact the signatories "structured the new agency to enable it to enjoy the special constitutional protection of the States themselves." *Lake Country Estates,* 440 U.S. at 401, 99 S.Ct. at 1177. *Accord, Sourk v. WMATA,* C.A. No. 82–3312, (D.D.C. Jan. 27, 1983).[2] Plaintiff's claim, which falls within the limited immunity retained by WMATA in section 80 of the Compact, is thus barred by the Eleventh Amendment and the suit must be dismissed as to defendant WMATA.

■ The allegations as to defendant John Chumas state a cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and the complaint will have to proceed as to him, if plaintiff so desires.

**2.** As an agency of the States of Maryland and Virginia as well as the District of Columbia, WMATA is entitled to share the Eleventh Amendment immunity of those states. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1981). The Court thus need not decide whether an agency of the District government alone could claim such immunity.