CONSOLIDATED RAIL CORPORATION

v.

UNITED TRANSPORTATION UNION GENERAL COMMITTEE OF ADJUSTMENT (PRR), et al.

Civ. A. No. 95–5228.

United States District Court, E.D. Pennsylvania.

Nov. 27, 1995.

Robert S. Hawkins, William J. Mateikis, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Consolidated Rail Corporation.

Lawrence A. Katz, Bala Cynwyd, PA, Joseph A. Coffey, Jr., Coffey & Kaye, Bala Cynwyd, PA, Norton N. Newborn, Norton N. Newborn Co., Cleveland, OH, for United Transportation Union General Committee of Adjustment (PRR).

Allan J. Sagot, Philadelphia, PA, Lawrence M. Mann, Alper and Mann, P.C., Washington, DC, Emil Di Nardo, Di Nardo, Di Nardo and Lukasik, Buffalo, NY, for Jack Arnold, Vice General Chairman, General Committee of Adjustment (PRR), United Transportation Union, Local 1418 and Ron Souder, Local Chairman.

*MEMORANDUM*

BARTLE, District Judge.

Plaintiff Consolidated Rail Corporation ("Conrail") has brought this action against certain labor unions and their leaders allegedly for instituting and threatening strikes or work stoppages over "minor disputes" in vio-

lation of the Railway Labor Act (the "RLA"), 45 U.S.C. §§ 151–188. Conrail seeks declaratory and injunctive relief as well as damages. Before the court is the motion of the defendants to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The defendants, in the alternative, seek to stay this action, pending an administrative determination under the Federal Railway Safety Act (the "Safety Act"), 49 U.S.C. §§ 20109(b) and (c).

■■■ When considering a motion under Rule 12(b)(6), the court must accept as true all well pleaded allegations. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir. 1989). A complaint should be dismissed only where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

The amended complaint alleges that the defendants instigated a series of unlawful strikes or threatened strikes over a multi-year period at Conrail's Conway Yard, in Conway, Pennsylvania. Conrail identifies "examples" of strikes on June 8, 1995, in the fall of 1994, in October, 1994, in July, 1992, and in February, 1992, as well as "examples" of unlawful "work stoppages" on December 24, 1989 and in the summer of 1989. In addition, the Conrail recites in the amended complaint strike threats on June 6, 1995 and in April, 1993. Conrail maintains that all of these strikes, work stoppages, and strike threats were over minor disputes.

■■■ The RLA divides disputes into "major" and "minor," although the Act itself does not use these specific terms. The shorthand descriptions were apparently first used by the Supreme Court in *Elgin, J. & E. Ry. Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945). Major disputes are those where the railroad seeks to change "rates of pay, rules, or working conditions of its employees, as a class. . . ." 45 U.S.C. § 152 (Seventh). This situation arises typically during negotiations for a new contract or where an old contract has expired. On the other hand, minor disputes

are those "arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 152 (Sixth). *See Brotherhood of R.R. Trainmen v. Chicago R. & I.R. Co.,* 353 U.S. 30, 33, 77 S.Ct. 635, 636–37, 1 L.Ed.2d 622 (1957). Under §§ 2 (Sixth) and 3 of the RLA, 45 U.S.C. §§ 152 (Sixth) and 153, an aggrieved party must submit minor disputes to compulsory arbitration in accordance with the mechanism provided under the RLA and may not strike over them. *See Conrail v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989); *Pittsburgh & Lake Erie R. Co. v. Railway Labor Executives' Ass'n,* 491 U.S. 490, 513, 109 S.Ct. 2584, 2598, 105 L.Ed.2d 415 (1989); *General Committee of Adjustment, United Transp. Union, Western Maryland Ry. Co. v. CSX R.R. Corp.,* 893 F.2d 584, 591 (3d Cir.1990).

Conrail seeks a declaratory judgment that the disputes in question were minor in nature and that defendants' conduct violated the RLA. Conrail also requests a permanent injunction against defendants to prohibit future strikes, strike threats, work stoppages, sick-outs, or slowdowns over minor disputes. Finally, the prayer for relief seeks damages in connection with the June 8, 1995 strike and specified liquidated damages for future violations of any permanent injunction which the court may issue.

■■ Defendant United Transportation Union General Committee of Adjustment (PRR) ("General Committee") first contends that the allegations of the amended complaint with respect to the strike threat on June 6, 1995 and the strike on June 8, 1995 should be dismissed as to it. According to the General Committee, the amended complaint accuses only defendant Jack Arnold, Vice General Chairman of the General Committee, and not the General Committee, of instigating the June 6, 1995 threatened slowdown. As to the June 8, 1995 strike, defendant contends that the allegations are not "sufficient" against it. In this regard, it points to ¶ 47 of the amended complaint which does not mention the General Committee. That para-

graph states, "As a direct and proximate result of the June 8, 1995 strike instituted by defendants. Jack Arnold, Ron Souder and UTU Local 1418, Conrail sustained financial damages in business disruption and lost business...." In support of its position, the General Committee cites § 6 of the Norris LaGuardia Act, 29 U.S.C. § 106 which provides:

> No officer or member of any association or organization and no association or organization participating or interested in a labor dispute shall be held responsible or liable in any court of the United States for the unlawful acts of any individual officers, members, or agents, except upon clear proof of actual participation in or actual authorization of such acts, or of ratification of such acts after actual knowledge thereof.

Even assuming the applicability of this provision of the Norris LaGuardia Act, the General Committee's argument is without merit. It overlooks ¶ 12 of the amended complaint which alleges:

> In violation of their obligation to resolve minor disputes through RLA's exclusive and mandatory procedures, *defendants* have, over a multi-year period, repeatedly called or threatened to call strikes or other forms of job actions against Conrail over minor disputes. [Emphasis added]

While the amended complaint does identify a strike threat on June 6, 1995 by Jack Arnold, it also states in § 18, "By issuing the June 6, 1995 threat of a work slowdown against Conrail over a minor dispute, *defendants* violated sections 2 (First) and 3 of the RLA [Railway Labor Act]." [Emphasis added]. Moreover, Conrail alleges in ¶ 15, "By instituting the June 8, 1995 strike against Conrail over a minor dispute, *defendants* violated sections 2 (First) and 3 of the RLA." [Emphasis added]. In ¶ 48 Conrail continues, *"Defendants* conducted their June 8, 1995 job action with no prior notice to Conrail, and without seeking to resolve their dispute with Conrail in conferences...." [Emphasis added]. The General Committee seems to confuse the quantum of proof needed to establish liability with the flexible notice pleading requirements. Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only state a "short and plain statement of the claim showing that the pleader is entitled to relief." Conrail has satisfied the pleading requirement by giving notice to all defendants, including the General Committee. Whether Conrail's proof will be sufficient must await another day.

■ All defendants argue that a six month statute of limitations is applicable to this action brought under the RLA. *International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Aloha Airlines, Inc.,* 790 F.2d 727 (9th Cir.1986); *Brotherhood of Locomotive Engineers v. Atchison, Topeka and Santa Fe Ry. Co.,* 768 F.2d 914, 919 (7th Cir.1985). *See Sisco v. Consolidated Rail Corp.,* 732 F.2d 1188, 1190–94 (3d Cir.1984). Since this lawsuit was filed on August 15, 1995, any claim existing prior to February 15, 1995 would be barred. We agree that a six month time bar is applicable to claims under § 2 (First) and § 3 of the RLA. This is consistent with the "relatively rapid resolution of labor disputes favored by federal law." *Sisco* at 1192. Moreover, the RLA is designed "to secure the prompt, orderly, and final settlement of grievances." *Id.* at 1192. Thus, to the extent that Conrail seeks declaratory relief for events prior to February 15, 1995, it is too late. We do not read the amended complaint to seek damages or injunctive relief for any events that occurred prior to that six month period. Nonetheless, findings concerning defendants' past conduct may be relevant to the question of what, if any, injunctive relief should be granted in connection with the alleged June, 1995 strike or other alleged unlawful conduct within the six month period or what, if any, prospective injunctive relief should be allowed. *See Consolidated Rail Corp. v. Brotherhood of Maintenance of Way Employees,* 847 F.Supp. 1294, 1302–03 (E.D.Pa.1994). We cannot ignore events occurring more than six months before the institution of suit even though the statute of limitations or laches may bar specific relief as to them.

■ Defendants next argue that the allegations fail to support a claim for injunctive relief in light of §§ 7 and 9 of the Norris–LaGuardia Act, 29 U.S.C. §§ 107 and 109.

This argument is without merit. The law is clear that the Norris–LaGuardia Act does not override a court's power to grant injunctive relief under the RLA to prevent strikes over minor disputes. *Chicago & N.W. Ry. Co. v. United Transp. Union,* 402 U.S. 570, 581–84, 91 S.Ct. 1731, 1737–39, 29 L.Ed.2d 187 (1971); *Brotherhood of R.R. Trainmen v. Chicago R. & I.R. Co., supra* at 39–42, 77 S.Ct. at 639–41. Once Conrail demonstrates that the requisite harm or threatened harm exists, that it is "arguably justified" that the dispute is minor, and that its position is not "frivolous or obviously insubstantial," an injunction may issue. *Conrail v. Railway Labor Executives' Ass'n, supra* at 307, 109 S.Ct. at 2482–83. Defendants' reliance on Judge Van Antwerpen's decision in *Consolidated Rail Corp. v. Brotherhood of Maintenance of Way Employees, supra* at 1303–04 for the unavailability of injunctive relief is inapposite. The court recognized the right to an injunction under appropriate circumstances but denied injunctive relief after an evidentiary hearing and a determination that the Union had no intention of calling a strike and that a threat of a job action was not "real or imminent." While the June 8, 1995 strike ended some time ago, this court has the power to grant prospective injunctive relief to enjoin future illegal conduct where a pattern of unlawful activity has occurred. *See U.S. Steel Corp. v. United Mine Workers,* 534 F.2d 1063, 1077 (3d Cir.1976); *Conrail v. B.M.W.E., supra* at 1302–03. This action is still at the pleading stage. We cannot say at this time as a matter of law that Conrail is not entitled to permanent injunctive relief. A decision on that issue must await further development of the record.

As noted above, Conrail seeks damages for its losses as a result of the June 8, 1995 strike. It also requests liquidated damages in the event of future illegal strikes and strike threats over minor disputes. Defendants argue that Conrail has no claim for damages for violation of the RLA. The RLA itself does not provide specifically for either injunctive relief or damages against labor organizations or labor leaders for strikes over minor disputes. Yet, as previously explained, it is well established that injunctive relief is available. The Supreme Court has "authorized the use of injunctive relief to vindicate the processes of the Railway Labor Act" in such situations. *Brotherhood of R.R. Trainmen v. Chicago R. & I.R. Co., supra* at 41, 77 S.Ct. at 641. However, the Supreme Court, as far as our research has found, has never passed upon the question whether a party may obtain damages for a strike over a minor dispute in violation of the RLA.

Our analysis begins with the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). This case involved a claim, not under the RLA, but under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681–1688. Conrail claimed to have been subject to continual sexual harassment by a teacher and sports coach employed by the defendant school district. While the Supreme Court had previously recognized an implied right of action under the act, it was faced now with the question whether a claim for monetary damages was available. The Court held that it was.

The Court explained that the question of whether a private right of action exists is 'analytically distinct' from the question of what remedies may be available. After a detailed analysis of precedents from *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) down to the present, the high Court concluded, "The general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin* at 70–71, 112 S.Ct. at 1035.

Congress enacted the RLA in 1926 as a result of extensive consultation and agreement between railway management and labor. The statute has been amended a number of times since and now includes airlines under its purview. 45 U.S.C. § 181; *see Texas & N.O.R. Co. v. Brotherhood of Ry. & S.S. Clerks,* 281 U.S. 548, 563, 50 S.Ct. 427, 431, 74 L.Ed. 1034 (1930); *CSX Transp. Inc. v. Marquar,* 980 F.2d 359, 368 (6th Cir.1992) (Batchelder, J., dissenting). An overreaching goal of the RLA is to obtain labor

peace in the railroad industry and to provide mechanisms to avoid disruptions in this important area of commerce. The five stated purposes of the RLA are:

(1) To avoid any interruption to commerce or to the operation of any carrier engaged therein;

(2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization;

(3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter;

(4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions;

(5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

45 U.S.C. § 151a.

In 45 U.S.C. § 152 (First), the RLA further stresses the importance of avoiding "any interruption to commerce or to the operation of any carrier":

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

Clearly, Congress sought to prevent strikes on the railroads, particularly over minor disputes. Consistent with this purpose, the legislative history contains nothing to indicate that Congress gave a "clear direction" to limit the remedies available under the RLA. Cf. Franklin at 70, 112 S.Ct. at 1035. On the contrary, as Judge Batchelder's compelling review of the legislative his-

tory establishes, Congress intended that "the courts would enforce the RLA with all available remedies...." CSX Transp. at 367. At oral argument here, counsel for defendant General Committee conceded that the legislative history contains no statement that Congress sought to prohibit a damage remedy.

As noted, one of the purposes of the RLA is to "avoid any interruption ... to the operation of any carrier...." 45 U.S.C. § 151a(1). This objective is accomplished in part by requiring compulsory arbitration with respect to minor disputes and by enjoining illegal strikes over those disputes when they occur. If the aim of Congress is to be achieved fully, however, the award of damages may sometimes be necessary. For example, should a union engage in a strike or series of strikes, each of short duration, there may be no opportunity for the carrier to obtain injunctive relief before the request for such relief has become moot. Yet, severe damage may have been done. Likewise, even if a railroad does obtain injunctive relief, it may have suffered a significant and quantifiable loss of revenue and extraordinary expenses as a result of the strike or work stoppage before it was ended. Customers, in the meantime, may have turned to competing railroads or modes of transportation, never to return. All of this is to say nothing about the harm to the public through the illegal interruption of commerce. In Franklin, the Supreme Court found equitable remedies to be "clearly inadequate," and allowed for a damage remedy. Id. at 76, 112 S.Ct. at 1038. In the same vein, injunctive relief may not suffice to 'make good the wrong done' in this case. See Franklin at 66, 112 S.Ct. at 1033. Damages may be required. What may be necessary are both damages and equitable relief, to right any wrong done to the carrier for "the interruption ... to [its] ... operation" and to deter further activity illegal under the RLA. 45 U.S.C. § 151a(1). It may take a combination of remedies to accomplish the important objective of the RLA "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working condi-

tions." 45 U.S.C. § 151a(5). There is no reason to believe that Congress intended to allow only one form of relief, which at times may be insufficient to realize its stated purposes.

■ Our research, we concede, has found no case under the RLA which has approved the award of monetary damages to a carrier for an illegal strike over a minor dispute, and a few even after *Franklin* which have held this remedy not to be available. These cases seem to rely primarily on the fact that damages have never previously been awarded in this situation.[1] *See, e.g., CSX Transp. Inc. v. Marquar, supra; United Transp. Union v. Springfield Terminal Co.,* 869 F.Supp. 42 (D.Me.1994); *Piedmont Airlines, Inc. v. Air Line Pilots Ass'n,* 863 F.Supp. 212 (E.D.Pa. 1994). This likewise is the thrust of defendants' argument in support of their motion to dismiss. This contention, however, misses the mark. The mere fact that a court may not have been asked for or may not have granted damages in the past is not compelling or even relevant in light of the 1992 Supreme Court decision in *Franklin* "that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin* at 70–71, 112 S.Ct. at 1035. We believe that, absent clear statutory language or legislative history to the contrary, *Franklin* teaches that such a remedy is available on a case-by-case basis where it is appropriate to accomplish the purposes of the RLA. Citing *Franklin,* the Court of Appeals in this circuit, albeit in connection with a different statute, has recently emphasized "the traditional presumption in favor of all appropriate relief" including damages. It left it to the "district court in the first instance the task of fashioning

appropriate relief." *W.B. v. Matula,* 67 F.3d 484, 494–95 (3d Cir.1995).

We, of course, do not decide here and now that defendants or any of them is liable for damages. Furthermore, it is premature to consider whether the court should announce the imposition of "liquidated damages" for future violations of any injunction. *See International Union v. Bagwell,* —— U.S. ——, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). We simply conclude that Conrail's claim for compensatory damages does not fail as a matter of law at the pleading stage.

■ Finally, defendants seek to stay this action pending a resolution of certain safety issues before the Railroad Adjustment Board under § 10(b) and (c) of the Safety Act, 49 U.S.C. § 20109(b) and (c); RLA, 45 U.S.C. § 153. We do not read the act as requiring the Court to stay this proceeding under the RLA simply on the basis of an affidavit of one of the defendants that a safety issue was involved in the June 8, 1995 strike. This event, it should be noted, is only one of the nine examples of alleged illegalities described in the amended complaint. While the Safety Act permits a worker to withdraw his services, it does so only if, among other things, there is a hazardous condition which presents an "imminent danger of death or serious injury." 49 U.S.C. § 20109(b)(1)(B)(i). The affidavit presented, even assuming that we may consider it in opposition to a Rule 12(b)(6) motion, does not describe safety violations of this magnitude. If at trial defendants' proofs are sufficient, the Safety Act may be applicable. The court may then have to defer to a decision of the Railroad Adjustment Board. It is not appropriate, however, to do so at this time. *See* 49 U.S.C. § 20109(c).

Defendants' motions to dismiss will be granted insofar as they seek a declaratory

---

1. We note that even though the statute is silent, the courts have awarded damages under other sections of the RLA. *See I.B.E.W. v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Galveston Wharves,* 400 F.2d 320 (5th Cir.1968), *cert. denied,* 395 U.S. 905, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); *Brady v. T.W.A., Inc.,* 401 F.2d 87 (3d Cir.1968), *cert. denied,* 393 U.S. 1048 89 S.Ct. 680, 681, 684, 21 L.Ed.2d 691 (1969); *Barthelemy v. A.L.P.A.,* 897 F.2d 999 (9th Cir.

1990); *Adams v. Federal Express Corp.,* 470 F.Supp. 1356 (W.D.Tenn.1979), *aff'd,* 654 F.2d 452 (6th Cir.1981); *Bangor & Aroostook R. Co. v. Brotherhood of L.F. & E.,* 442 F.2d 812 (D.C.Cir. 1971); *Burke v. Compania Mexicana De Aviacion,* 433 F.2d 1031 (9th Cir.1970); *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). All but one involved a monetary award to an employee.

judgment or other relief as to events that occurred more than six months prior to the filing of this action. Defendants' motions will otherwise be denied.