**Mary Jayne GILLOT, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

**Civ. A. No. 80–2692.**

United States District Court,
District of Columbia.

Jan. 7, 1981.

---

Eric S. Slatkin, Karl G. Feissner, Langley Park, Md., for plaintiff.

Stephen A. Goldberg, Vincent H. Cohen, Robert S. Cave, Gail L. Simmons, Asst. Corp. Counsel District of Columbia, Washington, D. C., for defendant.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

This case is before the Court on Defendant's Motion for Summary Judgment. Plaintiff alleges that Defendant, the Washington Metropolitan Area Transit Authority (WMATA), was negligent in failing to adequately protect her from abduction while she was on a parking lot owned and maintained by WMATA. Defendant maintains it is immune from suit by virtue of sovereign immunity and that, if subject to suit, it breached no duty to Plaintiff. The Court holds that Defendant is immune from suit insofar as its police protection function is concerned and the Court further holds that Defendant, in its role as parking lot operator, is not liable to Plaintiff as her damages were not proximately caused by Defendant's negligence.

The facts of this case are not in dispute.[1] On the evening of August 30, 1979, Mary

---

1. Only Defendant WMATA submitted a Local Rule 1–9(h) Statement of Material Facts in connection with its Summary Judgment motion. According to Rule 1–9(h), "the court may assume that the facts as claimed by the moving party except and to the extent that such facts are controverted in a statement filed in opposition to the motion." Since Plaintiff filed no opposing statement, WMATA's version of the

Jayne Gillot embarked from the Rhode Island Avenue METRO Station in the District of Columbia and went to her car in the parking lot adjoining the METRO station. The parking lot was owned and operated by WMATA, which operates the METRO system. Plaintiff got in her car and drove toward the exit fare gate area. While driving toward the gate area, Plaintiff saw an unknown man standing on an island between the two exit fare gates. The area was brightly lit at the time and Plaintiff could see the man from 10–15 yards away from the exit gates. Plaintiff stopped her car at the fare gate and engaged in a conversation with the unknown man. She paid the required exit fee, at which time the unknown man forced his way into her car. He abducted and raped Plaintiff.

Plaintiff alleges that adequate safeguards were not taken by WMATA at the Rhode Island Avenue METRO Station Parking Lot which could have prevented or deterred her abduction or rape. Specifically, Plaintiff maintains that WMATA was negligent in failing to have adequate lighting (an allegation which is contradicted by the undisputed facts), in locating the exit gate at a secluded spot and in failing to minimize potential hiding places for attackers. Plaintiff further specifies the failure of WMATA to provide guards and to sufficiently monitor the premises as the basis of her claim. In essence, Plaintiff maintains that WMATA had a duty to protect her which it breached.

A preliminary issue raised by this suit is whether WMATA can be sued at all. Section 80 of the WMATA Compact delineates when WMATA may be sued in tort. It states the standards of sovereign immunity:

> The Authority shall be liable for its contracts and for its torts and those of its

directors, officers, employees and agents committed in the conduct of any *proprietary* function, in accordance with the law of the applicable signatory (including rules on conflicts of laws), but shall not be liable for any torts occurring in the performance on a *governmental* function. D.C. Code § 1–1431 (1973) (emphasis added).[2]

■ Plaintiff characterizes WMATA's function as the operation of a parking lot for purposes of this case. She maintains that as operator of a parking lot, WMATA had a duty to its parking lot patrons. The operation of a parking lot by a public body is widely recognized as proprietary. *See, e. g., Cutnaw v. City of Columbus*, 157 N.E.2d 373 (Ohio 1958).

■ Defendant WMATA characterized its function, for purposes of this case, as providing police protection. Defendant maintains that Plaintiff's claim is a challenge to the adequacy of WMATA's police protection.[3] Providing police protection is a governmental function for purposes of sovereign immunity. 18 McQuillen *The Law of Municipal Corporations* § 53.51 (3d ed. 1977).

■ If Plaintiff's characterization is accepted, WMATA would be subject to suit as the function involved—operating a parking lot—is proprietary. If Defendant's view is adopted, WMATA would be immune from suit as the function involved—providing police protection—is governmental. As provided by Section 80 of the WMATA Compact, actions may lie for torts arising out of proprietary functions but not for torts arising out of governmental functions.

Plaintiff's claim is not a challenge to just one function but is actually a challenge to two functions performed by WMATA, one

facts has been effectively stipulated to by the Plaintiff.

**2.** Both sides agree that the test for sovereign immunity is that set out in Section 80 of the Compact rather than the so-called "discretionary/ministerial" test which looks to the nature of the act rather than to the nature of the function, and which is the common law doctrine of sovereign immunity in the District of

Columbia, *See, e. g., Rieser v. District of Columbia*, 563 F.2d 462, 474–75 (1977).

**3.** Congress authorized WMATA to supplement the Metropolitan Police Department and to provide a governmental police force. Metro Police Act of 1976, Pub.L.No. 94–306, 94th Cong. 2d Sess. (June 4, 1976).

governmental and one proprietary. First, Plaintiff is challenging the adequacy of WMATA's police protection. Plaintiff alleges that the absence of security personnel and inadequate monitoring of the lot were partial causes of her harm. This aspect of Plaintiff's claim goes to WMATA's governmental function of providing police protection throughout the METRO system. Since police protection is a governmental function, Plaintiff may not challenge inadequate police protection under the concept of sovereign immunity embodied in Section 80 of the WMATA Compact.

Plaintiff is also challenging the security procedures WMATA employed as operator of the Rhode Island Avenue Station parking lot. Plaintiff takes issue with the precautions taken by WMATA as parking lot owner for the safety of its patrons, citing inadequate lighting, poor placement of the exit gate and failure to eliminate hiding places. This is a challenge to WMATA's exercise of a proprietary function for which an action may lie *Cf. Stringfield v. Hackensack,* 68 N.J.Super 38, 171 A.2d 361 (1961) (governmental body subject to suit in case involving injury on parking lot). So while Plaintiff may not challenge the adequacy of WMATA police protection, Plaintiff has a cause of action against WMATA in its role as parking lot operator for failure to provide a safe place to park.

■ WMATA owed the Plaintiff the same duty any parking lot owner would owe any parking lot patron. *See* W. Prosser, *Law of Torts* § 57 at 351 (4th ed. 1971) (every landowner has some duty to someone legitimately on the premises). The dispositive question is the extent of the duty owed. Plaintiff would have this Court hold that a parking lot owner must protect its patrons against attackers, kidnappers and rapists even when, as here: (1) the assailant is not an employee of Defendant; (2) there

has been no history of such criminals in the area; and (3) the parking lot owner had no control over the actions of the third-party assailant. The law of torts does not impose such a strict duty on landowners.

■ Under a duty analysis, it is clear that a possessor of land is not an insurer of a visitor's safety and his duty does not extend to protecting visitors from third persons until he knows or has reason to know that the acts of third persons are occurring or are about to occur. Restatement (Second) of Torts § 344 and § 344, comment f (1965). *See also Id.* § 318. *Cf. Kline v. 1500 Massachusetts Avenue Apartment Corp.,* 439 F.2d 477 (D.C.Cir.1970) (landlord held liable where he had notice of repeated criminal assaults and robberies in the building). The facts are clear in this case: WMATA was not on notice of attacks on the Rhode Island Avenue Station Parking Lot.

■ An analysis employing the proximate cause concept would reach a similar conclusion.[4] The acts of a third person in committing an intentional tort or crime is a superceding cause of harm even though a defendant's negligence may have created a situation which afforded an opportunity to the third person to commit such a crime. Restatement (Second) of Torts § 448 (1965). An exception creating liability for a defendant exists where a defendant realized or should have realized the likelihood that a third person might avail himself of the opportunity to commit a crime. Again, in this case, Defendant was not aware of attacks. *See Black v. Sheraton Corporation of America,* 564 F.2d 531 (D.C.Cir. 1977) (defendant not liable where the harm results from an outside force, the risk of which was not a probable consequence of Defendant's conduct).

---

4. The Court is mindful of the D.C. Court of Appeals decision in Graham v. M & J Corporation, 108 *Daily Washington Law Reporter* 2389 (December 22, 1980) wherein the Court held that the proximate cause issue in cases involving the criminal acts of a third party on the land of defendant is generally one for the jury.

The Court of Appeals did leave open the possibility that a court could make a proximate cause determination as a matter of law in cases where the landowner clearly exercised no control over the third party. 108 D.W.L.R. at 2392.

Under either Tort concept—duty or proximate cause—the Defendant is not liable as a matter of law for the independent criminal acts of the third party which occurred in this case. Defendant's motion for summary judgment must be granted.