Roger HEFFEZ, Plaintiff,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al., Defendants.**

Civ. A. No. 83–920.

United States District Court, District of Columbia.

Sept. 9, 1983.

**1552**

Joseph Peter Drennan, Washington, D.C., for plaintiff.

Peter Ciano, Washington, D.C., for defendants.

---

**MEMORANDUM AND ORDER**

CORCORAN, District Judge.

In this action plaintiff seeks compensatory and punitive damages, as well as mandatory injunctive relief, against the Washington Metropolitan Area Transit Authority ("WMATA"), two officers of the Metro Transit Police (Hunter and Lee), and a subway station attendant (Williams). Plaintiff alleges that, in a series of incidents that took place on August 27, September 2 and September 3, 1982, he was verbally and physically assaulted, unlawfully arrested and imprisoned, and deprived of rights guaranteed him by the Fifth Amendment to the Constitution. Plaintiff claims a right of action under the common law, as well as 42 U.S.C. § 1983, inasmuch as the actions of the WMATA employees were allegedly taken "under color of state law."

WMATA has moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the complaint as against it on the grounds that (1) Section 80 of the WMATA Compact, Pub.L. No. 89–774, 89 Stat. 1324 (1966) ("Compact"), set out in D.C.Code § 1–2431 (1981), bars plaintiff's common law tort claims because the management and operation of the Metro Transit Police is a governmental function,[1] and (2) the Eleventh Amendment bars plaintiff's constitutional claims inasmuch as WMATA is an agency and instrumentality of its state signatories, *viz.,* Maryland and Virginia. Plaintiff has opposed.

**I. DISCUSSION**

A. *WMATA's Liability for Common Law Torts*

As a quasi-governmental entity created by its signatory parties, WMATA is entitled to share the sovereign immunity of those parties with respect to common law tort actions. *See Gillot v. WMATA,* 507 F.Supp. 454 (D.D.C.1981); *Martin v. WMATA,* 667 F.2d 435 (4th Cir.1981); *Morris v. WMATA,* 702 F.2d 1037 (D.C.Cir.1983); *Qasim v. WMATA,* 455 A.2d 904 (D.C.1983), *cert. de-*

---

1. Section 76 of the Compact empowers WMATA to establish and maintain the Metro Transit Police, "to provide protection for its patrons, personnel, and transit facilities."

*nied,* —— U.S. ——, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983). A limited waiver of that immunity is embodied in Section 80 of the Compact, which provides:

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

Thus, in order to determine WMATA's exposure to liability in this case, we must apply the functional test outlined above.

We begin our analysis with two controlling principles. First, the maintenance and operation of the Metro Transit Police is a *governmental* function for which WMATA enjoys immunity from tort liability under Section 80. *Martin,* 667 F.2d at 436; *Gillot,* 507 F.Supp. at 456. Second, operating a subway system is a *proprietary* function under Section 80 of the Compact for which tort liability may be imposed. *Qasim,* 455 A.2d at 906; *Walker v. WMATA,* No. 81–1867, mem. op. at 3 (D.D.C. June 3, 1983).

■ Counts 6 and 7 of the Complaint assert common law tort claims against WMATA. Count 6 alleges that WMATA willfully failed to exercise proper supervision and control of its employees, Williams, Hunter and Lee, on the dates in question. Count 7 seeks to hold WMATA vicariously liable for the tortious acts of the individual defendants under the doctrine of *respondeat superior.* To the extent that the claims asserted in those counts are based upon the actions of officers Hunter and Lee in their arrest of plaintiff, the claims are clearly barred by Section 80. The officers were engaged in a governmental function and WMATA cannot be held liable on these facts as a result of their actions. Thus, that much of Counts 6 and 7 is subject to dismissal.

■ On the other hand, defendant Williams was acting in the capacity of a station attendant, carrying out a proprietary function, to wit, managing the Van Ness subway station. WMATA can, therefore, consistently with Section 80 of the Compact, be held liable, directly and vicariously, for injuries caused by Williams' tortious acts. To this degree, Counts 6 and 7 will remain viable.[2]

**B.** *WMATA's Liability Under 42 U.S.C. § 1983*

To be liable under 42 U.S.C. § 1983, a "person" must act "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia," (i.e. "state law") to deprive another person of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In the present case, we must determine (1) whether WMATA's operation and maintenance of the Metro Transit Police occurs under color of state, as opposed to federal, law, and (2) whether WMATA is a suable "person" within the meaning of 42 U.S.C. § 1983. *See Morris,* 702 F.2d at 1041.

■ First, as pointed out by the Court of Appeals in *Morris,* WMATA is the product of an interstate compact entered into by Maryland, Virginia and the District of Columbia, and approved by Congress as required by Art. I, § 3 of the Constitution. Pub.L. No. 89–774, 80 Stat. 1324 (1966).[3]

---

**2.** According to Section 80 of the Compact, suit against WMATA is the exclusive remedy for actionable torts committed by its employees. Consequently, the common law tort claims asserted by plaintiff against Williams individually in Counts 2, 4 and 5, must be dismissed.

**3.** This Congressional consent and approval, standing alone, does not render the WMATA Compact part of federal law. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 399 and n. 13, 99 S.Ct. 1171, 1176 and n. 13, 59 L.Ed.2d 401 (1979).

The WMATA Compact has been similarly approved and enacted into "state law" by each of its signatories. *See* Ch. 869, Acts of General Assembly 1965, Md.Code [Transportation] § 10–204 (1977); Ch. 2, 1966 Acts of Assembly, Va.Code § 56–529, 530 (1981); D.C.Code § 1–2431 (1981).[4] WMATA is not a federal agency. *WMATA v. Norair Engineering Corp.,* 553 F.2d 233, 235 (D.C.Cir. 1977); *PEPCO v. State Corporation Commission,* 221 Va. 632, 272 S.E.2d 214, 215 (1980). Its governing board members are appointed by the signatories, not Congress. Compact, § 5. The Compact may be amended by the signatories at any time, *id.,* § 84, and any signatory may withdraw upon two years' written notice. *Id.,* § 83. Were it not for Congress' special governing role with respect to the District of Columbia, the national legislature would not have any voice in the amendment and withdrawal process.

Further, WMATA's police powers are concurrent with those of its signatories and the localities in which it operates. Compact, § 76. Finally, WMATA's liability for contracts and torts, as specified in Section 80 of the Compact, is determined by the law of the applicable signatory, including rules on conflict of laws.

■ In light of the foregoing, we conclude that WMATA acts under color of state law for purposes of 42 U.S.C. § 1983 in the operation of its police force. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 399–400, 99 S.Ct. 1171, 1176–1177, 59 L.Ed.2d 401 (1979); *Morris,* 702 F.2d at 1041; cf. *WMATA v. One Parcel of Land,* 706 F.2d 1312, 1316–18 (4th Cir.1983) (WMATA's power of eminent domain is federal in origin and, thus, Section 82 of Compact is federal law).

■ Whether WMATA is a suable "person" within the meaning of 42 U.S.C. § 1983, turns on whether it enjoys Eleventh Amendment sovereign immunity.[5] *See*

*Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 726 n. 2 (5th Cir.1982); *Mt. Healthy City School Dist. Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). WMATA contends that, since it is an "agency and instrumentality" of its signatory states (Maryland and Virginia), Compact, § 4, and those states are immune from damage actions brought under 42 U.S.C. § 1983 by reason of the Eleventh Amendment, *Quern v. Jordan,* 440 U.S. 332, 338, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978) (states are not "persons" for purposes of § 1983), it must also be immune from suits brought under that statute, except as otherwise provided in Section 80 of the Compact. Since plaintiff's constitutional claims against WMATA arise out of defendant's performance of a governmental function, defendant argues, the Eleventh Amendment, as implemented by Section 80, shields WMATA from liability.

Without the Eleventh Amendment, Section 80 of the Compact would merely be a codification of the common law immunity enjoyed by municipal governments and political subdivisions. That immunity does not protect those entities from liability under 42 U.S.C. § 1983. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Lake Country Estates,* 440 U.S. at 400–402, 99 S.Ct. at 1176–1177; *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The key issue here, therefore, is whether WMATA is an arm of state government so as to invoke the protection of the Eleventh Amendment, or, rather, defendant is equivalent to a municipal corporation or other political subdivision entitled to a less potent immunity shield. *See Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 572.

---

**4.** Congress, acting as the local legislature for D.C., enacted the Compact at the same time it was approved. *See* 89 Stat. 1324.

**5.** That Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted *against* one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The leading case in this area is *Lake Country Estates.* There, the Supreme Court held that the compact-created entity under review was not an agency or instrumentality of its signatory states and, therefore, it was not entitled to Eleventh Amendment immunity from suits under 42 U.S.C. § 1983. 440 U.S. at 402, 99 S.Ct. at 1177. The analytical test to be applied was stated as follows:

> If an interstate compact discloses that the compacting States created an agency comparable to a county or municipality, which has no Eleventh Amendment immunity, the Amendment should not be considered to immunize such an entity. Unless there is good reason to believe that the States structured the new agency to enable it to enjoy the special constitutional protection of the States themselves, and that Congress concurred in that purpose, there would appear to be no justification for reading additional meaning into the limited language of the Amendment.

*Id.* at 401, 99 S.Ct. at 1177.

Beginning with the language of the WMATA Compact, we must "examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself." *Laje,* 665 F.2d at 727 (citations omitted).[6] Crucial factors to consider are the degree of local autonomy and control, "and most importantly whether the funds to defray any award would be derived from the state treasury." *Id.; accord Trotman v. Palisades Interstate Park Comm'n.,* 557 F.2d 35, 38 (2d Cir.1977); *Lake Country Estates,* 440 U.S. at 402, 99 S.Ct. at 1177.

Although it is true that WMATA is an agency and instrumentality of its member states, exercising governmental functions and powers delegated by those states and Congress, *see* Compact, §§ 2, 4, this fact does not, of itself, entitle WMATA to Eleventh Amendment immunity. *Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 572; *Lake Country Estates,* 440 U.S. at 401, 99 S.Ct. at 1177. Rather, it is only the starting point for our analysis under the principles enunciated above.

Like the school board in *Mt. Healthy* and the planning agency in *Lake Country Estates,* WMATA is a regional entity with a great degree of autonomy. *See* Compact, §§ 2–4, 12. It is governed by a six-member board, two appointed by each signatory, that has the authority to exercise all the powers enumerated in the Compact without prior or subsequent state approval. *Id.,* §§ 5–8. Those powers are extensive. For example, just as the hospital district in *Laje,* 665 F.2d at 727, WMATA may, *inter alia:*

(a) Sue and be sued;

(b) Adopt and use a corporate seal and alter the same at pleasure;

(c) Adopt, amend, and repeal rules and regulations respecting the exercise of the powers conferred by this Title;

(d) Construct, acquire, own, operate, maintain, control, sell and convey real and personal property and any interest therein by contract, purchase, condemnation, lease, license, mortgage or otherwise but all of said property shall be located in the Zone and shall be necessary or useful in rendering transit service or in activities incidental thereto;

(e) Receive and accept such payments, appropriations, grants, gifts, loans, advances and other funds, properties and services may be transferred or made available to it by any signatory party, any political subdivision or agency thereof, by the United States, or by any agency thereof, or by any other public or private corporation or individual, and enter into agreements to make reimbursement for all or any part thereof;

(f) Enter into and perform contracts, leases and agreements with any person, firm or corporation or with any

---

**6.** The present action, unfortunately, is not a case such as *Council of Commuter Organizations v. Metro. Transp.,* 683 F.2d 663, 672 (2d Cir.1982), where the compact clearly specified that the multi-state entity "shall enjoy the sovereign immunity of the party states."

**1556**

political subdivision or agency of any signatory party or with the federal government, or any agency thereof, including, but not limited to, contracts or agreements to furnish transit facilities and service;

.    .    .    .    .

(i) Contract for or employ any professional services;

(j) Control and regulate the use of facilities owned or controlled by the Authority, the service to be rendered and the fares and charges to be made therefor;

.    .    .    .    .

Compact, § 12. In addition, WMATA can acquire property through eminent domain. *Id.,* § 82; *see Laje,* 665 F.2d at 727.

Finally, and most importantly, WMATA's financing does not come primarily from the treasuries of its signatory states. Although the signatory states do, voluntarily, provide WMATA with a great deal of financial backing for construction, *see* Compact, § 18; National Capital Transportation Amendments of 1979, Pub.L. No. 96–184, 93 Stat. 1320 (1980), operating costs are to be paid out of operating revenues, i.e. fares. Compact, §§ 16, 17. Any shortfall between costs incurred and revenues received is to be made up by the local participating governments, not the states. *Id.* WMATA can also borrow money from lending institutions, issue revenue bonds, and mortgage or pledge its properties and/or revenues. *Id.,* §§ 21, 27–29. It may not, however, pledge the credit of its signatory states, nor can those states be liable for compensation to landowners whose property has been taken by WMATA through exercise of its condemnation powers. *Id.,* §§ 29, 82(c). It is clear, therefore, that money judgments rendered against WMATA in civil rights suits would be paid solely out of its own financial resources, as augmented by contributions from the municipalities and political subdivisions being served by the regional transit system.

The preceding analysis reveals a factual situation that is highly analogous to those found in *Mt. Healthy, Lake Country Estates,* and *Laje,* where the Supreme Court and the Fifth Circuit Court of Appeals determined that the entities in question were undeserving of Eleventh Amendment immunity. We similarly conclude that WMATA has substantial corporate and municipal characteristics that make it more like a local governmental unit or political subdivision, than an arm of state government, and, therefore, it is not entitled to the protection of the Eleventh Amendment in suits brought under 42 U.S.C. § 1983. Consequently, WMATA's motion to dismiss on that basis must be denied.[7]

## II. CONCLUSION

WMATA enjoys some measure of immunity against common law tort actions arising out of its performance of governmental functions. A damage suit against WMATA is not, however, tantamount to an action against either of its signatory states, mainly because it poses no real danger to their state treasuries. Thus, WMATA is not shielded by the Eleventh Amendment, or Section 80 of the Compact, from suits brought in federal court under 42 U.S.C. § 1983.

Accordingly, it is, this 9th day of September, 1983

ORDERED that defendant's motion to dismiss be, and the same hereby is, GRANTED IN PART and DENIED IN PART; and it is

FURTHER ORDERED that, to the extent Counts 6 and 7 of the Complaint assert common law tort claims against WMATA based upon the actions of its police officers, they are hereby DISMISSED; and it is

FURTHER ORDERED that, to the extent Counts 2, 4 and 5 of the Complaint assert common law tort claims against defendant Williams individually, they are hereby DISMISSED; and it is

---

**7.** WMATA has not yet challenged the sufficiency of plaintiff's allegations of constitutional wrongs. As a result, we express no opinion on that issue. We do note, however, that, to the extent plaintiff's constitutional claims against WMATA are based on the doctrine of respondeat superior, they are not viable. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036.

FURTHER ORDERED that, as a result of the aforementioned orders, plaintiff's complaint be, and the same hereby is, treated as follows:

COUNT 1—Remains viable.

COUNT 2—DISMISSED

COUNT 3—Remains viable

COUNT 4—DISMISSED as against defendant Williams; remains viable as against defendants Hunter and Lee.

COUNT 5—DISMISSED as against defendant Williams; remains viable as against defendants Hunter and Lee.

COUNT 6—Remains viable against WMATA only insofar as it is based on the actions of defendant Williams.

COUNT 7—Remains viable against WMATA only insofar as it is based on the actions of defendant Williams.

COUNT 8—Remains viable.

COUNT 9—Remains viable.

COUNT 10—Remains viable.