Carl A. SANDERS, et al., Plaintiffs,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

**Civ. A. No. 84–3072.**

United States District Court, District of Columbia.

Jan. 9, 1986.

William P. Lightfoot, Washington, D.C., for plaintiffs.

Dominic Arleo, Asst. Gen. Counsel, Washington, D.C., for defendant.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiffs, employees of defendant Washington Metropolitan Transit Authority (WMATA), filed this action on October 31, 1984. Under the terms of the defendant's Work Agreement, WMATA requires its operating employees to undergo blood and urine tests following any serious operating incident and upon return after a period of sick leave, in order to detect the presence of addictive or controlled sub-

stances in the employees system. The plaintiffs were terminated based upon the results of their post-incident medical examinations.[1]

The plaintiffs now challenge their terminations alleging deprivation of their Fourth and Fourteenth Amendment rights, deprivation of their right to privacy, negligent termination, violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et. seq., and violation of 42 U.S.C. § 1983. The matter is now before the Court on the defendant's motion for summary judgment.

## WMATA IS ENTITLED TO INVOKE ELEVENTH AMENDMENT IMMUNITY

The defendant contends that WMATA, as an arm of the state government, is entitled to invoke Eleventh Amendment immunity. In opposition, the plaintiffs assert that WMATA is not so entitled, and that even if WMATA is entitled to invoke Eleventh Amendment immunity, it has waived that right because the acts in question constituted the performance of "proprietary" rather than "governmental" functions.

The question of the defendant's entitlement to Eleventh Amendment immunity turns upon whether or not WMATA is an "instrumentality of the signatory parties" and an arm of the state, rather than a mere "political subdivision." WMATA was created by an interstate compact entered into by Maryland, Virginia, and the District of Columbia. WMATA Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966). The test for determining whether such an agency is entitled to Eleventh Amendment protection is set forth in *Lake Country Estate, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979):

> If an interstate compact discloses that the compacting States created an agency comparable to the county or municipality, which has no Eleventh Amendment immunity, the Amendment should not be construed to immunize such entity. Un-

---

**1.** Most of the plaintiffs who elected to file grievances under the collective bargaining agreement were reinstated with full or partial back pay awards pursuant to arbitration awards or settlement agreements.

less there is good reason to believe that the States structured the new agency to enable it to enjoy the special constitutional protection of the States themselves, and that Congress concurred in that purpose, there would appear to be no justification for reading additional meaning into the limited language of the Amendment.

Under these circumstances, "the Court must look to the language of the Compact to determine whether Congress and the states intended WMATA to be an arm of state government." *Strange v. Chumas,* 580 F.Supp. 160, 163 (D.D.C.1983).

Several courts in this circuit have addressed this issue, and there appears a split in decisions. *See Stitt v. WMATA,* C.A. 81–3880 (D.D.C.1985) (WMATA entitled to invoke Eleventh Amendment immunity) [Available on WESTLAW, DCTU database]; *Andrew M. Clarke, Jr. v. WMATA,* 654 F.Supp. 712 (D.D.C.1985) (WMATA entitled to Eleventh Amendment immunity): *Strange v. Chumas, supra* (WMATA entitled to invoke Eleventh Amendment immunity); *Heffez v. WMATA,* 569 F.Supp. 1551 (D.D.C.1983) (WMATA not entitled to invoke Eleventh Amendment immunity). This Court finds most persuasive the weight of authority which holds that WMATA is entitled to invoke Eleventh Amendment immunity as an arm of the government.

## WMATA HAS NOT WAIVED ITS IMMUNITY

■ Once Eleventh Amendment immunity is established, the next issue presented involves whether WMATA has waived that immunity. The plaintiffs contend, that as the actions in question constituted an exercise of a proprietary function, WMATA is estopped from claiming Eleventh Amendment immunity from the plaintiffs' tort action. Section 80 of WMATA's compact provides:

The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agents, committed in the conduct of any proprietary function, in accordance with

the law of the applicable signatory ... but shall not be liable for any torts occurring in the performance of a governmental function.

D.C.Code § 1–2431 (1981).

As cited by both parties, "the test for determining whether a particular activity is governmental or proprietary is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit." 18E McQuillen, Municipal Corporations, § 53.29 at 228 (3d ed. 1977). The Court notes a Supreme Court opinion stating that:

the distinction between governmental and proprietary functions rests not on one definitive standard, but rather on a succession of factors and points ... a literal application of any one test may produce harsh results in a particular case, as well as create an unsound and artificial distinction of little use on a case by case basis.

*Owen v. City of Independence,* 445 U.S. 622, 644 and n. 26, 100 S.Ct. 1398, 1412 and n. 26, 63 L.Ed.2d 673 (1980), *rehearing denied,* 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980).

The plaintiffs essentially advance two arguments. The plaintiffs assert that "conduct will be deemed a governmental function where the activity under consideration is of such a unique nature that it can only be performed by a governmental agency or that it is essential to the care of the governmental activity." 18E McQuillen, *supra* at 303. Relying upon *Berkowski v. Hall,* 91 Mich.App. 1, 282 N.W.2d 813 (1979), which held that the operation of a municipal fire department's emergency medical services unit was not cloaked with sovereign immunity, the plaintiffs argue that by way of analogy, because WMATA's tests could be performed by any properly trained person, the Court should find that the administration of the tests constituted a proprietary function. Plaintiffs also place reliance upon the stated purpose of the testing, as set forth in the collective bargaining agreement:

to ensure that accurate human-factor information is available for investigations that are required as a result of operating incidents. These examinations ... are essential for conducting comprehensive investigations and for protecting the interests of both the Authority and individual employees.

Plaintiffs' Supplementary Opposition to Defendant's Motion for Summary Judgment, Exhibit 1. However, plaintiffs attempt to assert the *Berkowski* holding too broadly and the language of the stated purpose, as it appears in the context of the work agreement, is not, in itself, conclusive, in establishing that the testing was administered primarily for a pecuniary purpose or to protect WMATA from possible liability in connection with operating incidents.

The defendant asserts that:

a governmental body has immunity if it is exercising a power pertaining to the making and enforcing of regulations to prevent crime, or to preserve the public health or welfare.

*Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Defendant cites numerous cases where an exercise of WMATA's police power has been held "protected governmental activity." *See Whitaker v. WMATA*,[2] C.A. 82–2771 (D.D.C. 1984) (employment practices of the transit police department are governmental activities); *Morris v. WMATA*,[3] C.A. 80–1307 (D.D.C.1984) (installation of the fare gates are governmental activities).

Asserting that the Compact itself authorizes WMATA to operate the subway system, the defendant maintains that a necessary duty involves providing operators who are competent to operate the buses and trains:

WMATA, as a governmental body, has a vital interest in ensuring that our bus and train operators are not under the influence of drugs or alcohol and are performing in their jobs safely and honestly.

Defendant's Reply at 3. Section 2 of the Compact charges the Authority with the responsibility "to plan, develop, finance and cause to be operated improved transit facilities." It follows that providing only operators who are competent to operate the transit vehicles, constitutes a goal in furtherance of the defendant's statutory duty and an activity for the common good of the patrons who use the transit facilities.

According to the defendant, the purpose of the testing was simply to detect and remove from service, drug and alcohol users who were operating WMATA's buses and trains, thereby protecting the lives and property of WMATA's patrons and the public at large. The defendant points out that the three jurisdictions involved have enacted laws which prohibit driving under the influence of drugs or alcohol as such driving creates serious safety hazards taking the lives of citizens and destroying millions of dollars of public and private property. Clearly, the activity, in issue, was in the public interest.

Defendant provides persuasive authority in *Division 241, Amalgamated Transit Union v. Suscy*, 405 F.Supp. 750 (N.D.Ill. 1975), *affirmed* 538 F.2d 1264 (7th Cir. 1976). In *Division 241*, Chicago Transit Board Authority (CTA) employees who had been discharged on the basis of the results of compulsory blood and urinalysis tests, brought suit alleging that the intrusion unconstitutionally violated their Fourth Amendment rights. The district court held that:

the state has a substantial interest in the detection and elimination of operating employees who are under the influence of alcohol or drugs while on duty. It is beyond dispute that the CTA must enact and enforce regulations designed to protect the thousands of persons who daily entrust their lives and safety to the care of CTA operating employees.

The court found that such rules were both desirable and necessary.

The Court of Appeals affirmed, stating that "the CTA has a paramount interest in

---

**2.** Aff'd, *Whitaker v. WMATA, et al.*, 804 F.2d 153 (D.C.Cir.1986) (mem).

**3.** Aff'd., *Morris v. WMATA*, 781 F.2d 218 (D.C. Cir.1986).

protecting the public by ensuring that bus and train operators are fit to perform their jobs." *Id.* at 1267. Moreover, the court concluded that:

> the ... public interest in the safety of mass transit riders outweighs any individual interests [of the transit employees] in refusing to disclose physical evidence of intoxication or drug use.

*Id.*

Under a similar rationale, in a recent case in this jurisdiction, *Maurice Turner v. Fraternal Order of Police*, 500 A.2d 1005 (D.C.App.1985), officers challenged the Department's regulation that any member of the force could be required to submit to urinalysis testing "upon the suspicion" of drug abuse. The officers complained that the rule provided no specific guidelines under which such testing might be ordered or directed, and that without such guidelines, the testing might be ordered under such circumstances as to be unreasonable, and therefore, a violation of the Fourth and Fifth Amendments.

Citing *Division 241*, the Court held that the [urinalysis] intrusion was permissible, noting that Fourth Amendment protections extend only to those areas in which an individual has a legitimate expectation of privacy:

> [t]he Department, like the transit authority [in *Division 241*,] has a paramount interest in protecting the public by ensuring that employees are fit to perform their jobs. Without doubt, drug abuse can have an adverse effect upon a police officer's ability to execute his duties. Given the nature of the work and the fact that not only his life, but the lives of the public rest upon his alertness, the necessity of rational action and a clear head unbeffudled by narcotics becomes self-evident ... the use of controlled substances by police officers creates a situation fraught with serious consequences to the public ... the Department was

justified in promulgating Special Order 83–21.

*Turner*, at 1008.

Similarly, in the instant action, as the defendant points out, the risk of serious injury is apparent, given the speed and closeness within which the buses and trains operate in this congested metropolitan area. Even the slightest decrease in alertness and reflex ability increases the danger of accidents.[4] The Court agrees that the compulsory testing is in the nature of a governmental, rather than a proprietary function.

The defendant additionally argues that the proprietary/governmental distinction need not be addressed by this Court. Advancing a novel theory, and relying upon the *Clarke* opinion, the defendant argues that the limited waiver of immunity can only apply to common-law tort and contract claims, as all of the federal and constitutional claims are automatically consumed by WMATA's Eleventh Amendment immunity. According to the defendant's theory, the only claim which would survive the automatic grant of Eleventh Amendment immunity is the negligent termination claim. The defendant further maintains that as such a claim would be governed by the terms of the collective bargaining agreement, the Court need not analyze the claim under the proprietary/governmental distinction. The defendant maintains that the plaintiffs limited their remedies by entering into the collective bargaining agreement, and that such a "derivative state law claim" is precluded by the terms of the collective bargaining agreement, as the plaintiffs have received all of the relief which they can obtain pursuant to the filing of grievances and/or arbitration of their claims under the appropriate grievance procedures.

However, as this Court finds that the defendant's administration of the compulsory tests, as well as WMATA's policy decisions to terminate those employees who

---

**4.** The plaintiffs' reliance upon *Allen v. City of Marietta,* 601 F.Supp. 482 (N.D.Ga.1985) is misplaced as that court seemed to focus more upon the extremely hazardous nature of the work performed by the electricians and the threat of injury to the employees, rather than potential danger to the public at large.

tested positive for the presence of drugs or alcohol were governmental functions, the Court need not address that argument. The regulations and activities in question, including the discharge (and removal of these employees from service) constituted governmental activity for the common good and in the public interest.

PLAINTIFFS' CLAIMS UNDER THE RE-HABILITATION ACT OF 1973 ARE BARRED.

Finally, the plaintiffs assert a cause of action under Section 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. §§ 793, 793(a). However, it is well established law that no private cause of action exists under 29 U.S.C. § 793. *See Hodges v. Atchison, Topeka and Santa Fe Railway Co.,* 728 F.2d 414 (10th Cir.1984); *Meyerson v. State of Arizona,* 709 F.2d 1235 (9th Cir.1983). Plaintiffs also attempt to state a claim under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794. However, such a claim is barred by the Eleventh Amendment. *Atascadero Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Thus, the plaintiffs' action must be dismissed.

An appropriate Order has been issued.