Esmat SAIDI, Plaintiff,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

**Civil No. 95–1900 (NHJ/PJA).**

United States District Court, District of Columbia.

May 30, 1996.

Daniel M. Wemhoff, for plaintiff.

David Keyser, Washington, DC, for defendant.

### *MEMORANDUM OPINION*

ATTRIDGE, United States Magistrate Judge.

This matter was tried to the Court without a jury after the parties waived their right to a jury trial and consented to proceed before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c). Based on the evidence submitted at trial, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R.Civ.P. 52(a).

### Findings of Fact And Conclusions

On July 14, 1995, the plaintiff Esmat Saidi, a 67 year old Iranian woman, boarded a Washington Metropolitan Area Transit Authority ("WMATA") bus in Falls Church, Virginia, with the intention of traveling to 11th Street and Pennsylvania Avenue, N.W., in the District of Columbia. Her journey required her to transfer to a second bus at Rosslyn, Virginia and transfer to yet a third bus some place in the area of the George Washington University Hospital in northwest Washington D.C. Either as she entered the bus at Falls Church or as she boarded the second bus at Rosslyn, Saidi requested and was given a transfer which she believed would enable her to board a third bus near GW Hospital which would take her to her

ultimate destination—Pennsylvania Avenue and 11th Street in northwest Washington. Upon boarding the third bus Saidi gave her transfer to the driver, Warren Matthews ("Matthews"), and proceeded to her seat without paying any fare. The bus continued on its route as Matthews informed Saidi that the transfer was "no good" and that she would have to pay the fare or leave the bus. They argued about her refusal to pay the fare until the bus reached the 1700 block of H Street NW Washington. At that point Matthews stopped the bus and directed Saidi to exit the bus because she refused to pay the fare. As she was about to leave by the front exit, Saidi directed a racial epithet ("stupid nigger") at Matthews and spat in his face. Saidi began to descend the front steps of the bus and quickly flee through the front door. Matthews rose to his feet, grasped Saidi as she exited the bus, and restrained her by placing his forearm around her shoulders and beneath her chin. He forced her to sit on the steps of the bus and stood on the street in the front doorway of the bus with his arms extended across the entrance with one leg on the first step so as to prevent Saidi from leaving. Matthews directed one of the passengers to request assistance from the Secret Service officers on duty across the street from the stopped bus so that they could handle the matter, but they did not respond. Some minutes later Fire Department medics arrived on the scene, however, Saidi declined medical assistance. After the departure of the medics Sergeant Timothy Mallory ("Mallory") and Officer Richard Ray ("Ray") of the Washington Metropolitan Area Transit Authority police arrived. Following inquiry of Matthews and some of the passengers Mallory concluded that Saidi had assaulted Matthews by spitting in his face. Saidi denied that she spat in Matthews' face and refused to respond to Mallory's request for her identification. Saidi was thereupon charged with simple assault, handcuffed, and placed in the rear of a scout car for transport to a nearby police precinct. Upon entering the vehicle Saidi complained of back pain so Mallory directed Ray to take her to the hospital for examination and treatment. Following her discharge from the hospital Saidi was released from police custody, given a

citation, and took a taxicab to the northwest Washington police precinct where she retrieved some personal items and from there she took a taxicab to her home in Fairfax. Saidi continued to experience pain over the weekend so that on Monday, July 17, she decided to go to the emergency room at Fairfax Hospital for further examination and treatment. Following examination, she was referred to a private physician who treated her on two or three occasions and then referred her to an orthopedic physician. However she waited until January 1996, six months after her referral, before visiting the orthopedist. He, in turn, referred her for physical therapy which she did not attend. In April 1996, on the eve of trial, Saidi went to yet another physician who referred her for physical therapy which she attended on the two Fridays immediately preceding our trial on May 7, 1996.

Saidi had initially sued Warren Matthews individually; however, after WMATA conceded that at all times Matthews was acting within the scope of his employment and that if Matthews was found to have committed any tortious conduct it would be liable for his tortious actions under the doctrine of respondeat superior, Saidi dismissed her complaint against him. She has also sued Sgt. Mallory and Officer Ray individually for false arrest and false imprisonment, malicious prosecution and for violations of 42 U.S.C. § 1983. Saidi also seeks recovery from WMATA for slander and defamation, false imprisonment, assault and battery, and breach of legal duties to provide safe transport and for failure to protect her from excess force and intentional wrongful acts.

Included within her claim for money damages, Saidi sought compensation for her diminished reputation by reason of her arrest. In order to rebut that claim the defendants were able to bring out, over objection, the fact that Saidi had two convictions in Fairfax County, one of which occurred a few months before the bus incident, for attempting to allude the police while operating her motor vehicle. Saidi admitted these convictions and admitted that she had served thirty days in

jail following the second conviction.[1]

## Conclusions of Law

The named defendants in this case are WMATA, Sergeant Timothy Mallory and Officer Ray. The plaintiff dismissed the bus driver Matthews as a defendant in this case and WMATA conceded that Matthews was within the scope of employment. Thus WMATA is directly liable through the doctrine of respondeat superior and the WMATA Compact for the tortious conduct, if any, of Matthews.

The plaintiff seeks recovery from the various defendants on nine theories: count one (Slander and Defamation by Matthews); count two (False Imprisonment by Matthews); count three (Assault & Battery by Matthews); count four (False Arrest and False Imprisonment by Sgt. Mallory and Officer Ray); count five (Malicious Prosecution by Sgt. Mallory, Officer Ray and Matthews); count six (§ 1983 violations by Sgt. Mallory, Officer Ray and Matthews); count seven (breach of legal duty), count eight (breach of legal II), and count nine (expungement of arrest record).

## Discussion of the Nine Counts

### 1. Count One (Slander and Defamation by Matthews)

The plaintiff contends that the bus driver's statement "your transfer is invalid" and "is no good" is slanderous because she was impliedly charged with the offense of theft of services. However the transfer which she tendered to Matthews, which was received in evidence as defendants' exhibit 2(a) was indeed invalid for transportation upon the third Metrobus that she boarded in the vicinity of George Washington University Hospital—the bus operated by Matthews. The transfer was for passage on a Virginia Metro bus going in an outbound direction and was not valid for use in the District of Columbia. Since the statements "your transfer is invalid" and "is no good" were true, the truthfulness of this factual statement defeats any cause of action for slander and defamation against Matthews and consequently WMATA.

Slanderous words or false words are a required element of a cause of action for slander. *See Farnum v. Colbert*, 293 A.2d 279, 282 (D.C.1972) (citing Rest.2d of Torts § 569 (1938)); and *Tocker v. Great Atlantic & Pacific Tea Co.*, 190 A.2d 822, 823 (D.C. 1963). As the plaintiff failed to produce evidence of a slanderous or a false statement, this count must fail. As the threshold issue of a cause of action for slander has failed, there is no need for the Court to address the other elements of slander.[2]

### 2. Count two (False Imprisonment by Matthews)

The plaintiff also seeks damages for Matthews' detention of her until the WMATA police arrived and arrest her. She contends her detention by the driver constituted false imprisonment.[3] False imprisonment occurs when there is unlawful detention. *Tocker*, 190 A.2d at 824.

Initial detention before an arrest is permissible in the District of Columbia provided there is a good faith and reasonable belief that a crime was committed or was about to be committed. *Curry v. Giant Food Co. of the District of Columbia*, 522 A.2d 1283, 1287–88 (D.C.1987) (detention for shoplifting in a grocery store); *see also Stebbins v. WMATA*, 495 A.2d 741, 743 (D.C.1985) (citing a case where security personnel legitimately detained potential shoplifter upon a " 'good faith, reasonable belief' "), and *Lansburgh's, Inc. v. Ruffin*, 372 A.2d 561, 565 (D.C.1977) (permitting a reasonable deten-

---

**1.** This testimony was not extensively developed and was admitted for the sole purpose of rebutting or impeaching her claim for damages for injury to her reputation. *See Smith v. Executive Club, Ltd.*, 458 A.2d 32, 39 (D.C.1983).

**2.** The plaintiff also failed to produce evidence of a diminished reputation as a result of the alleged slanderous statement. *Tocker v. Great Atlantic & Pacific Tea Co.*, 190 A.2d 822 (D.C.1963).

**3.** Mr. Matthews testified he never read Ms. Saidi her rights, nor did he state he arrested her, and Ms. Saidi's testimony supports this finding. Accordingly, as Mr. Matthews did not arrest the plaintiff there is no evidence to support a claim for false arrest.

tion before arrest). I find that Mr. Matthews had a good faith and reasonable belief that a crime had occurred because Saidi spat on him. Spitting on an individual constitutes an assault on that person. D.C.Code § 22–504. *Ray v. United States,* 575 A.2d 1196, 1199 (D.C.1990). His knowledge of the commission of a crime enabled him to justifiably detain the plaintiff.

Moreover, if Matthews had permitted the plaintiff to flee the bus, in all likelihood WMATA would have been unable to locate and charge her for her unlawful act. Matthews only did what was reasonable under the circumstances and did not unnecessarily detain the plaintiff. Accordingly, I find that Matthews' detention of Saidi cannot serve as a basis for a civil action for false imprisonment and the count of false imprisonment against WMATA for Matthews' actions must fail.

### 3. Count three (Assault & Battery by Matthews)

■ Saidi additionally charged the bus driver, Matthews with common law assault and battery. She contends that Matthews used greater force than necessary to detain her from fleeing the bus. She alleges the bus driver practically choked her when he sought to stop her from exiting the bus and as a consequence broke her necklace by the manner in which he restrained her and caused injuries to her back, shoulders, knees, feet, legs, wrists and arms and that she "was damaged all over."

Mr. Wilbur Hernandez, an observer 10 feet outside of the bus, also testified that the plaintiff's necklace was broken by Matthews and that the plaintiff was restrained when Matthews put his arm around her neck area.

Moreover, the physician who treated the plaintiff at the emergency room immediately following the incident made a notation in Saidi's medical chart of tenderness in the back, neck and shoulder areas and redness to the back and neck.

Nevertheless other witnesses, presented by both the plaintiff and defendant, testified that they were in close enough proximity to see the incident with Ms. Saidi and knew with reasonable certainty that Matthews did not choke, hit, punch, knee or kick Ms. Saidi as alleged by her. They further testified that Mr. Matthews merely used his arms on Ms. Saidi's shoulders and arms to stop her from fleeing the bus.

I find that the plaintiff has not established by a preponderance of the evidence that Matthews indeed assaulted her by using excess force to restrain her. *Magwood v. Giddings,* 672 A.2d 1083 (D.C.App.1996).

Tenderness to one's back, shoulders and neck is a reasonable consequence of force being applied to detain a fleeing person. Moreover I find that any injuries Ms. Saidi may have sustained as a result of the incident did not proximately cause the total injuries she alleges to continue to have ten months after the incident.

Accordingly, I find that the plaintiff's count of assault and battery against WMATA for the actions of Matthews must fail.

### 4. Count four (False Arrest and False Imprisonment by Sgt. Mallory and Officer Ray)

■ Upon arrival at the scene, Sergeant Mallory and Officer Ray interviewed the bus driver and several other witnesses. Based upon the information gathered from Matthews and the witnesses, Sergeant Mallory arrested the plaintiff. At Mallory's direction Officer Ray took her into custody and put her in the back of the police vehicle.

■ Saidi asserts the WMATA police arrested her without probable cause and are therefore liable for false arrest and false imprisonment. False imprisonment is the same as false arrest. *Gabrou v. May Department Stores Co.,* 462 A.2d 1102, 1103 (D.C.1983) (per curiam).

As Sgt. Mallory and Officer Ray are police officers for WMATA, one must look to the WMATA Compact for WMATA's potential liability.

The WMATA Compact provides that WMATA "shall not be liable for any torts occurring in the performance of a governmental function." This is consistent with the sovereign immunity retained by the states. *Strange v. Chumas,* 580 F.Supp. 160, 162 (D.D.C.1983). The operation of the Metro

Transit Police (WMATA police) has been held to be a governmental function, *Heffez v. WMATA,* 786 F.2d 431 (D.C.Cir.1986), therefore the Metro Transit Police have qualified immunity for their actions. *McCarthy v. Kleindienst,* 741 F.2d 1406, 1409 (D.C.Cir. 1984).

In order to successfully establish a defense of qualified immunity to a charge of false arrest, the WMATA police must show probable cause existed for the arrest of the plaintiff. *Gabrou,* 462 A.2d at 1104; *McCarthy v. Kleindienst,* 741 F.2d at 1413; and *Wade v. D.C.,* 310 A.2d 857, 862 (D.C.1973) (*en banc*) (directed verdict granted).

WMATA police have the same powers, including the powers of arrest and limitations, as the D.C. Metropolitan Police. D.C.Code § 1–2431 (1987).

A police officer need not "show probable cause in the constitutional sense; it is sufficient that the arresting officer have a good faith, reasonable belief in the validity of the arrest and detention." *Gabrou* at 1104. The test for the validity of an arrest without a warrant is found in D.C.Code § 23–581(a)(1)(C) which states in pertinent part:

a "law enforcement officer may arrest, without a warrant having previously been issued therefor—

(C) a person who he has probable cause to believe *has committed* or it about to commit any offense listed in paragraph (2) and, unless immediately arrested, may not be apprehended, may cause injury to others, or may tamper with, dispose, or destroy evidence." (emphasis added).

Paragraph (2) referenced in this provision includes the crime of assault as defined by D.C.Code § 22–504 as a crime for which a warrantless arrest can be made. D.C.Code § 22–504 makes criminal an unlawful assault or threatening another in an unlawful matter. As shown above, the act of spitting falls squarely within the category of the criminal offense of an assault.

Accordingly, if an officer has reasonable grounds to believe that an assault was committed, the officer may make an immediate warrantless arrest of the alleged offender if the officer believes the offender committed an assault, and may not be later apprehended.

The WMATA police were specifically authorized pursuant to the law of this jurisdiction to arrest Ms. Saidi on July 14, 1995, and the arrest was not done with excessive force. They had a belief that Ms. Saidi had just committed an assault by spitting on Matthews, that she was attempting to flee the bus, and that she would not provide any identification. Under those beliefs and pursuant to statutory authorization they arrested Ms. Saidi. I find that Sergeant Mallory and Officer Ray had probable cause to arrest the plaintiff and that objectively "a reasonably prudent police officer" would have acted similarly. *Prieto v. May Department Stores Co.,* 216 A.2d 577, 578 (D.C.1966).

Accordingly, this finding of probable cause on behalf of Sgt. Mallory and Officer Ray precludes any claim Ms. Saidi has for false arrest and false imprisonment. *Gabrou,* 462 A.2d at 1104. Therefore I conclude this count must fail.

### 5. Count five (Malicious Prosecution by Sgt. Mallory, Officer Ray and Matthews)

WMATA Police have qualified immunity when they engage in law enforcement matters. *McCarthy v. Kleindienst,* 741 F.2d at 1409. In order to successfully assert a qualified immunity defense to malicious prosecution, the WMATA police must have had probable cause to arrest the plaintiff. *Id.* at 1413, and *Stebbins v. WMATA,* 495 A.2d 741 (D.C.1985).

There is no material distinction between reasonable grounds for detention in false imprisonment and probable cause in malicious prosecution. *Prieto,* 216 A.2d 577, 578. Therefore the existence of probable cause for false arrest will "likewise defeat a claim for malicious prosecution." *Gabrou* 462 A.2d at 1103 (citing *Nichols v. Woodward & Lothrop, Inc.,* 322 A.2d 283, 285 (D.C. 1974)). As the Court has already determined that Sgt. Mallory and Officer Ray had probable cause to arrest Ms. Saidi, this determination bars recovery by Ms. Saidi under her malicious prosecution claim. *Stebbins,* 495 A.2d at 743.

Accordingly, I conclude that this count must fail based on the prior finding that probable cause existed.[4]

### 6. Count six (§ 1983 violations by Sgt. Mallory, Officer Ray and Matthews)

The plaintiff charges Sergeant Mallory, Officer Ray and Mr. Matthews with 42 U.S.C. § 1983 violations as a result of the incidents of July 14, 1995.

To be liable under § 1983, a "person" must act "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia" to deprive another person of "any rights, privileges, or immunities secured by the Constitution and laws." *Heffez v. WMATA*, 569 F.Supp. 1551, 1553 (1983) (citing 42 U.S.C. § 1983). WMATA acts under color of state law in the operation of its police force. *Id.* at 1554.

Section § 1983 does not provide a remedy for common law torts, but rather creates a cause of action against those acting under of color of state law who cause a deprivation of a federal right. *Street v. Surdyka*, 492 F.2d 368, 371 (4th Cir.1974). In order to be subject to § 1983 liability, an "officer must clearly violate a clearly established right." *District of Columbia v. Evans*, 644 A.2d 1008, 1015 (D.C.1994). However, a law enforcement officer lawfully performing a governmental function is qualifiedly immune from later civil prosecution. *Id.* at 1014.

Therefore, if an officer has probable cause to arrest then he (she) is not subject to possible § 1983 liability. *Street*, 492 F.2d at 373; *Dellums v. Powell*, 566 F.2d 167, 176 (D.C.Cir.1977) (stating if reasonable grounds for an officers' belief exist coupled with good-faith then there is qualified immunity and they are not subject to § 1983 liability). Moreover, a law enforcement officer is also immune from § 1983 liability for reasonable but mistaken conduct. *Evans* at 1014.

As I have previously determined Sgt. Mallory and Officer Ray had probable cause to arrest the plaintiff and since probable cause is a defense to a § 1983 action, I conclude as a matter of law that the § 1983 action against Sgt. Mallory and Officer Ray must fail.

In addressing the § 1983 action against Matthews, the Court recognizes that he does not enjoy the same qualified immunity as the officers. *Heffez v. WMATA*, 569 F.Supp. at 1553. However, since I have concluded that Matthews had legal justification to reasonably detain the plaintiff on the bus and was not liable for assault and battery, slander or the false imprisonment, I further find and conclude that Matthews did not violate a "clearly established" right of the plaintiff and a § 1983 violation did not occur. *See District of Columbia v. Evans*, 644 A.2d at 1015 n. 4.

### 7. Count seven (breach of legal duty) and count eight (breach of legal II)

Before trial, the plaintiff amended her complaint with respect to counts seven and eight. In doing so, the plaintiff nominally changed her breach of contract claims to assert claims in tort.

Count seven was amended to allege that WMATA breached its duty through its employee Matthews to provide safe and secure transportation to the plaintiff. Count eight was amended to allege that WMATA breached its duty to protect the plaintiff from excessive force and intentional acts against her person.

However, in amending the counts, the plaintiff did not allege any additional factual basis for these counts. The counts are merely duplicative of the other counts. Any relief to which she may be entitled would flow from the success on the other counts. WMATA is not an insurer of the safety of its passengers, but owes to them a reasonable degree of care. *D.C. Transit*

---

4. Also, this count would fail because the plaintiff failed to introduce testimony or evidence of the consequences of the arrest. There is no evidence of what became of the simple assault charge. Thus, there is no evidence that the plaintiff prevailed in the criminal prosecution which is an necessary element in a claim for malicious prosecution. *Shulman v. Miskell*, 626 F.2d 173, 174 (D.C.Cir.1980).

*System, Inc. v. Smith,* 173 A.2d 216, 217 (D.C.1961). These counts in essence allege nothing more than common law negligence. I find that Saidi has failed to prove by a preponderance of the evidence that Matthews was negligent either in his actions before Saidi spat on him or in his response to her assault. Therefore these counts will be dismissed.

### 8. Count nine (expungement of arrest record)

The plaintiff seeks expungement of her arrest record which reveals that she was arrested for simple assault on July 14, 1995. There is no statute authorizing a federal court to expunge the arrest record of an adult offender. Rather, expungement, in the appropriate case, is achieved through the exercise of the court's "inherent equitable power[s]." *Livingston v. United States Department of Justice,* 759 F.2d 74, 78 (D.C.Cir.1985), and *Doe v. Webster,* 606 F.2d 1226 (D.C.Cir.1979). However, this power is generally reserved for those cases involving "either a lack of probable cause coupled with special circumstances, flagrant violations of the Constitution, or other unusual or extraordinary circumstances." *Doe,* 606 F.2d at 1230 (citations omitted). In the District of Columbia, "[d]ismissal of the complaint, without more, will not justify expungement of the arrest record." *Livingston,* 759 F.2d at 78 n. 30.

As I find for the defendant on all counts, find that probable cause did exist and lastly, that there are no "extraordinary circumstances" in this case, the Court declines to enter any order regarding the plaintiff's arrest record.

### Conclusion

The Court finds in favor of the defendants on all counts and directs the Clerk of the Court to enter judgment in favor of the defendants Washington Metropolitan Area Transit Authority, Sergeant Timothy Mallory and Officer Richard Ray and against the plaintiff Esmat Saidi.

SO ORDERED: